**Betty Ann MARSEE, as Administratrix of the estate of Marvin Sean Marsee, deceased, Plaintiff–Appellant,**

v.

**UNITED STATES TOBACCO COMPANY, a New Jersey corporation, Defendant–Appellee.**

No. 86–2094.

United States Court of Appeals, Tenth Circuit.

Jan. 10, 1989.

Mack Muratet Braly of Mack Muratet Braly & Associates, P.C., Tulsa, Okl., George W. Braly and Dania Deschamps–Braly, of Braly & Braly, Ada, Okl., of counsel, for plaintiff-appellant.

Alston Jennings of Wright, Lindsey & Jennings, Little Rock, Ark., Edwin J. Jacob and Timothy M. Finnegan of Jacob, Medinger & Finnegan, New York City, and Andrew M. Coats of Crowe & Dunlevy, Oklahoma City, Okl., for defendant-appellee.

Before SEYMOUR, SETH and ANDERSON, Circuit Judges.

SETH, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not mate-

rially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); Tenth Cir. R. 34.1.8. The cause is therefore ordered submitted without oral argument.

The plaintiff, Betty Ann Marsee, brought this products liability action against the defendant, United States Tobacco Company, on behalf of the estate of her late son, Marvin Sean Marsee. Plaintiff alleged that defendant's snuff products caused her son to develop oral cancer which led to his early death. The case was tried to a jury which returned a verdict in favor of defendant after a five-week trial. On appeal the plaintiff challenges various evidentiary and discovery rulings made by the trial court.

It was undisputed at trial that Sean Marsee had used defendant's product, Copenhagen Brand Snuff, from the age of twelve until he developed cancer at the age of eighteen. It was estimated that Sean Marsee used four or more cans of the product per week during this six-year period. In April of 1983, Marsee was diagnosed with cancer of the right lateral border area of the tongue. Despite three operations the cancer spread throughout the oral cavity. Sean Marsee died nine months after his cancer was first diagnosed.

The trial turned on the issue of whether the decedent's cancer was caused by his use of the defendant's product. Extensive discovery took place before the five-week trial. The trial afforded plaintiff opportunity to introduce an impressive amount of evidence on the issue of causation. She called thirty-one witnesses, including fourteen experts, and introduced 140 exhibits. Despite this effort plaintiff was unable to convince the jury that defendant's product caused her son's cancer.

Given the scope and magnitude of the evidence presented at trial, this court's statements in *Higgins v. Martin Marietta Corp.*, 752 F.2d 492, 498 (10th Cir.1985), are especially worthy of consideration:

"During a lengthy trial, the judge must make numerous rulings on evidence. Of necessity, these rulings must be made without any advance notice. Deference must be given to the trial judge who is most familiar with the circumstances surrounding the issues in question. 'The trial court's conduct of trial proceedings, including rulings on motions and objections, will not be disturbed on appeal unless it affirmatively appears from the record that the trial court abused its discretion.' [Citations omitted.] "A jury verdict will only be set aside if manifest error affecting a substantial right of a party occurs or the litigant is deprived of a fair trial."

Because we find that plaintiff's contentions on appeal hold no merit, we affirm the trial court's entry of judgment in favor of defendant.

## I.

Plaintiff first contends that the trial court erred by refusing to allow her to enter in evidence the videotaped deposition of Louis Kohley, a severely disfigured, post-surgical cancer patient. Plaintiff claims the deposition was probative of whether Sean Marsee's tongue cancer was caused by the use of snuff. Mr. Kohley's case was similar to Mr. Marsee's in many respects. Both men were young when they began using snuff, both were healthy and active in athletics, and both developed oral cancer after using the defendant's products for several years.

The trial court excluded the videotaped deposition under Fed.R.Evid. 403, citing the danger of unfair prejudice. This court has evinced a strong reluctance to upset a trial court's ruling on the admissibility of evidence under Fed.R.Evid. 403. "Challenges under Rule 403 call for balancing the probative value of and need for the evidence against the harm likely to result from its admission." *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1257 (10th Cir. 1988). This balancing task "is one for which the trial judge, because of his familiarity with the full array of evidence in the case, is particularly suited." *Id.* (quoting *Rigby v. Beech Aircraft Co.*, 548 F.2d 288, 293 (10th Cir.1977)). "The decision to exclude (or admit) evidence under this rule is within the sound discretion of the trial court, and will not be reversed absent a clear abuse of discretion." *K–B Trucking*

*Co. v. Riss International Corp.*, 763 F.2d 1148, 1155 (10th Cir.1985).

In this case, the trial court was well within its discretion in excluding the videotape from evidence. It found the probative value of the deposition to be almost nonexistent and stated:

> "The fact that one other individual using smokeless tobacco also developed oral cancer similar to that suffered by Sean Marsee constitutes very little, if any, proof that smokeless tobacco caused Marsee's cancer."

*Marsee v. United States Tobacco Co.*, 639 F.Supp. 466, 468 (W.D.Okla.1986). Courts have demonstrated a strong tendency to discount the probative value of evidence of similar instances of disease on the issue of causation when the disease involved is "widespread and commonly understood to be caused by many factors." *Grenier v. Dow Chemical Co.*, 628 F.Supp. 1529, 1531 (D.Me.1986). *See also Amatucci v. Delaware and Hudson Ry. Co.*, 745 F.2d 180, 184 (2d Cir.1984) (evidence of other engineers who had heart attacks excluded because it was irrelevant to show plaintiff's heart attack was caused by employment as an engineer); *In re "Agent Orange" Product Liability Litigation*, 611 F.Supp. 1223, 1252–53 (E.D.N.Y.1985) (evidence that 17 of the roughly 7,500 persons who develop Hodgkin's Disease each year were exposed to Agent Orange is not probative on issue of whether exposure to Agent Orange causes Hodgkin's Disease).

In the absence of any evidence that Mr. Kohley's oral cancer was caused by the use of snuff, the trial court correctly held that any inferences the jury could have drawn from his case would have been purely conjectural. The trial court then balanced the low probative value of the deposition against the high likelihood that it would unfairly prejudice the defendant. In his deposition, Mr. Kohley described in detail the painful course of his treatment for oral cancer, including the surgical removal of parts of his tongue, neck, jaw, and the floor of his mouth. His tongue was missing, as was his chin and part of his jaw. Speech was so difficult for Mr. Kohley that his mother had to interpret his testimony. The trial court held:

> "The grim physical condition of Kohley, coupled with the similarities of the Kohley case to Marsee's, might well have led the jury to give the Kohley testimony greater weight than it was due on the issue of causation of oral cancer."

*Marsee*, 639 F.Supp. at 468–69. The trial court was clearly within its discretion in holding that the danger of unfair prejudice to defendant far outweighed the low probative value of the Kohley deposition. The deposition was properly excluded under Fed.R.Evid. 403.

## II.

■ Plaintiff next contends that the trial court erred by sustaining defendant's hearsay objection to testimony proffered by Dr. Kent Westbrook, one of plaintiff's experts, on recent cases of oral cancer among young people who dip snuff. Dr. Westbrook was called by plaintiff in her case-in-chief and again in rebuttal to testify on the issue of causation.

During his testimony, Dr. Westbrook expressed his opinion that, in general, the use of snuff is a cause of oral cancer. He also expressed the opinion that Sean Marsee's cancer of the tongue was caused by use of defendant's snuff products. The former opinion was based on Dr. Westbrook's experience in treating oral cancer patients and on his review of the literature on oral cancer. The latter opinion was based on his review of Sean Marsee's case history.

Later, during his redirect examination, Dr. Westbrook testified as follows that he was aware of other young oral cancer patients who had used snuff:

> "Q. ... Do you have any knowledge that would be relied upon generally by people in your field of recent cases of oral cancer in young people who are snuff dippers?
>
> "A. There are some cases that I have talked to doctors about that appear to be oral cancers associated with snuff dipping. These are cases that [plaintiff's counsel] gave me the name of the doctor.

I called the doctor and talked with them about the patients."

Transcript at 1069–70. Following this exchange, the trial court sustained defendant's hearsay objection to any *further* testimony by Dr. Westbrook on the details of these conversations. The trial court did not strike the testimony of Dr. Westbrook that he was aware of other oral cancer cases among young snuff dippers. It simply excluded the details of what he had been told over the telephone about these cases.

Plaintiff argues that the trial court misapplied Fed.R.Evid. 703 by excluding the details of Dr. Westbrook's conversations regarding other oral cancer cases. This argument in itself misconstrues the operation of the rule. Rule 703, entitled "Bases of Opinion Testimony by Experts," states:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

This rule simply outlines what types of facts or data an expert may rely upon when giving an expert opinion. The rule governs whether the expert's opinion testimony is admissible. If the expert bases an opinion on facts that meet the criteria of the rule, i.e., on facts that are reasonably relied upon by experts in his particular field, the opinion is admissible. *See, e.g., Ponder v. Warren Tool Corp.*, 834 F.2d 1553, 1556–57 (10th Cir.1987); *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238 (3d Cir.1983), *rev'd on other grounds sub nom. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538. (1986)

In this case, the trial court did not exclude any of the opinion testimony of Dr. Westbrook. Instead, the court merely prevented the witness from testifying in detail on certain facts that helped him form those opinions. It is not disputed that these facts, namely the substance of Dr. Westbrook's telephone conversations with other doctors concerning cases of oral cancer among young snuff users, amounted to hearsay. This testimony would have been inadmissible had the plaintiff attempted to introduce it in any context other than as a basis for Dr. Westbrook's opinions.

Fed.R.Evid. 705 permits inquiry on cross-examination into the facts underlying an expert's opinion even if those facts would be otherwise inadmissible. This case, however, presents an issue not addressed by either Rule 703 or 705: whether such inadmissible evidence may be brought out on direct examination. The trial court found that it was inherently unreliable since the information had been supplied to Dr. Westbrook by plaintiff's counsel after the doctor had been retained to testify in this case, and thus held that it could not be brought out on direct examination.

Other courts have admitted expert opinion testimony but have excluded hearsay evidence offered in support of that testimony, both on direct and cross-examination. *See Bryan v. John Bean Division of FMC Corp.*, 566 F.2d 541, 544–47 (5th Cir.1978); *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 576 F.Supp. 107, 158 (D.Del.1983), *aff'd without opinion*, 740 F.2d 958 (3d Cir.1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923. (1985). In *Bryan*, the court excluded the evidence on the ground that it was unnecessary and unreliable, factors also present in this case.

A review of the circumstances surrounding the trial court's ruling, however, dictates that this court need not resolve this issue. Under Fed.R.Civ.P. 61 and Fed.R. Evid. 103(a), this court will not set aside the verdict of a jury based on an error in the admission or exclusion of evidence unless the error prejudicially affects a substantial right of a party. *See Beacham v. Lee–Norse*, 714 F.2d 1010, 1014 (10th Cir. 1983); *Rasmussen Drilling, Inc. v. Kerr–McGee Nuclear Corp.*, 571 F.2d 1144, 1149 (10th Cir.1978), *cert. denied*, 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171. (1978) In this case the trial court's ruling did not preju-

dicially affect a substantial right of plaintiff. The *substance* of Dr. Westbrook's telephone conversations was admitted into evidence. The jury thus heard the doctor testify that he was aware of other cases of oral cancer among young people who chewed tobacco. Only the detailed descriptions of these cases were excluded. Further, a careful review of Dr. Westbrook's testimony reveals that at no time during his lengthy direct and cross-examinations, when his opinions and their bases were extensively explored, did he testify that these cases played any role in the formulation of his opinions. It was only on redirect that Dr. Westbrook mentioned these cases, and even then he did not state that they played a part in forming his opinions. While it can be surmised that these cases helped to reinforce those opinions, the fact that Dr. Westbrook did not mention them in connection with any specific opinion precludes any finding that the trial court's ruling affected a substantial part of plaintiff's case.

### III.

■ Plaintiff next contends that the trial court erred by excluding the testimony of Drs. Connolly and Glass. This testimony was offered in rebuttal on the issue of causation. Drs. Connolly and Glass would have testified to the presence of an epidemic of oral cancer, including cancer of the tongue, among young people who use snuff. Plaintiff contends that this evidence was offered to rebut the defense's theory that tongue cancers among young people were anomalous.

The admission of rebuttal testimony is subject to the discretion of the trial court. *Grant v. Brant,* 796 F.2d 351, 356 (10th Cir.1986); *Whiteley v. OKC Corp.,* 719 F.2d 1051, 1055 (10th Cir.1983). The exclusion of the testimony of Drs. Connolly and Glass presents no abuse of that discretion. The issue of an epidemic of oral cancer among young snuff users was in fact raised during the plaintiff's case-in-chief. One of plaintiff's experts, Dr. Breslow, testified to the matter on direct examination. Another of plaintiff's experts, Dr. West-

brook, testified on the issue on cross-examination. As related earlier, Dr. Westbrook also testified on the existence of current cases of tongue cancer among young snuff users during his redirect examination. The rebuttal testimony of Drs. Connolly and Glass was thus cumulative and repetitive of issues that had been raised during plaintiff's case-in-chief, and the trial court was well within its discretion in excluding it. *See Grant, supra.*

### IV.

■ Plaintiff contends that the trial court erred by excluding from evidence a chart comparing the dosages of nitrosamines that caused cancer in laboratory animals during an experiment with the dosages of nitrosamines Sean Marsee was exposed to over the course of the six years he used snuff. We disagree.

The trial court excluded the chart from evidence under Fed.R.Evid. 403. It held that the chart had the potential to mislead the jury and that it was cumulative of other evidence that had been admitted. Without commenting on the chart's potential to mislead, the record demonstrates that the chart was cumulative and repetitive. The information contained in the excluded exhibit was in fact received into evidence. One of plaintiff's experts, Dr. Hecht, whose videotaped deposition was shown to the jury, described the chart and testified at length and in detail about the information contained in the chart. Dr. Lijinski, another of plaintiff's experts, also testified about the information contained in the chart and commented that the comparison depicted by the chart was useful.

■ Error may not be predicated upon the exclusion of cumulative evidence. *See Lutz v. Weld County School District No. 6,* 784 F.2d 340, 344–45 (10th Cir.1986). The facts reflected in the chart were explained to the jury in detail. Thus, its exclusion did not prejudicially affect any substantial right of plaintiff.

### V.

■ Plaintiff next contends that the trial court erred when it excluded two published

reports, the report of the International Agency for Research on Cancer (IARC) and the report of the Consensus Development Conference of the National Institute of Health (NIH), offered on the issue of causation. This contention is also without merit.

The trial court excluded the reports as hearsay. It correctly held that the reports failed to qualify under the hearsay exceptions of Fed.R.Evid. 803(8), 803(24) or 804(b)(5). *Marsee,* 639 F.Supp. at 470. The reports fail to qualify for the exception of Rule 803(8) since they were not prepared by a public office or agency as required by this rule. The IARC report is a review and critique of the literature on the causation of cancer, conducted at a conference attended by scientists from various countries. The NIH report was prepared by a panel of scientists and non-scientists after a conference at which invited speakers presented papers concerning different aspects of smokeless tobacco. Neither document reflects the findings of a governmental agency authorized by law to report on the adverse health effects of smokeless tobacco.

█ The trial court also correctly held that the reports do not qualify for the "catch-all" exceptions of Rules 803(24) and 804(b)(5). In order for these exceptions to apply, the trial court must find that "the interests of justice will best be served by the admission" of the evidence. Here, the trial court found that the interests of justice did not require the admission of the reports into evidence.

> "Since these reports merely repeated a great deal of other material introduced into evidence, the ends of justice did not require the admission of these reports. This is particularly true in view of the fact that much of the information contained in these reports was otherwise admitted into evidence through expert witness testimony."

*Marsee,* 639 F.Supp. at 470. This finding by the trial court is amply supported by the record and will not be upset on appeal. Plaintiff's lawyers had numerous witnesses read significant portions of the reports to the jury. During the cross-examination of several defense witnesses, counsel read selected portions of the reports and asked if the witness agreed. Finally, many of the articles reviewed in the reports were received into evidence as exhibits.

## VI.

Plaintiff next contends that the trial court erred by allowing defendant to admit a series of learned articles on the issue of notice. Prior to this ruling, the trial court ruled that scientific articles offered by plaintiff and published prior to the diagnosis of Sean Marsee's cancer could be admitted as exhibits on the issue of notice. These articles all indicated that snuff posed a health threat to those who used it. After plaintiff's articles were admitted, defendant offered its own scientific articles as exhibits on the issue of notice. The trial court admitted the articles, noting that it would be "unbalanced and unfair" to give the jury access to plaintiff's articles but deprive them of defendant's.

█ Plaintiff offers two grounds for its contention that the articles were improperly admitted. First, it claims the articles were hearsay. The hearsay rule is irrelevant in this instance, however, since the articles were not admitted to prove the truth of the matter asserted. Instead, they were admitted on the issue of whether the defendant had notice of the potential dangers its product posed to consumers.

█ Second, plaintiff claims that defendant's articles were irrelevant on the issue of notice. She claims that only those articles tending to demonstrate the hazardous character of the defendant's product are relevant on the issue of whether the defendant had notice that its product was potentially dangerous.

This argument cannot stand up to scrutiny. "The determination of whether evidence is relevant is within the sound discretion of the trial court, and that decision will not be disturbed on appeal absent a showing of a clear abuse of discretion." *Whiteley v. OKC Corp.,* 719 F.2d 1051, 1057 (10th Cir.1983); *Averitt v. Southland Motor Inn of Oklahoma,* 720 F.2d 1178, 1181–

82 (10th Cir.1983). For purposes of determining if it had notice of the hazardous character of its product, defendant was chargeable with knowledge of the entire body of scientific learning and literature relating to that product in existence at the time of Sean Marsee's death. The issue is whether the then-existing scientific and medical evidence as a whole tended to show the product was dangerous. Defendant's articles were relevant on this issue, and the trial court was clearly within its discretion in determining that the jury should consider the "whole picture" instead of only articles offered by plaintiff.

Plaintiff also complains that the trial court failed to issue a limiting instruction to the jury to the effect that the articles were offered only on the issue of notice. The record demonstrates, however, that plaintiff neither asked for such an instruction nor objected to its absence.

### VII.

Plaintiff also complains of one answer given by Dr. Byers, an expert witness called by the defendant, during the qualification portion of his testimony. Dr. Byers is a surgeon specializing in the treatment of cancers of the head and neck at the M.D. Anderson Hospital. He was asked by defense counsel if he had discussed the fact that he was going to testify at this trial with his superiors at M.D. Anderson. The witness responded as follows:

> "A. Yes, that was one of the first things I did when I was contemplating appearing here was to touch base [with superiors at M.D. Anderson], to sort of inform them what my plans were, what my intentions were, what the situations, the various ramifications potentially of this might generate, and I must say that I had their unequivocal support."

Transcript at 3392.

Plaintiff interprets this answer as a statement that Dr. Byers' superiors agreed with the substance of his testimony. She objects to the statement as "obvious, blatant, prejudicial hearsay" that inferred to the jury that "other experts, ... not

present and testifying in court, support the testimony of the witness." Pl.Br. at 37.

In fact, Dr. Byers said no such thing. What he did say was that his superiors supported his decision to testify. In other words, he had their permission to appear. This trivial reference by Dr. Byers can in no way be said to have affected any substantial right of plaintiff.

### VIII.

Finally, plaintiff contends that the trial court erred by allowing defendant to redact various documents before they were produced to plaintiff prior to trial. Plaintiff made a motion to compel the production of the redacted portions of the documents during a hearing on the Friday before trial. The trial judge reviewed the redacted material over the weekend, and held on the first day of trial that all of the redacted material was both irrelevant and protected by either the work product or attorney-client privilege.

This court has held that "the trial court [has] broad discretion as to the control of discovery, ... and rulings will not be set aside short of an abuse of discretion." *Shaklee Corp. v. Gunnell,* 748 F.2d 548, 550 (10th Cir.1984) (citations omitted). In particular, rulings on the relevancy of materials sought for discovery are within the trial court's discretion. *Ryan v. Hatfield,* 578 F.2d 275, 276 (10th Cir.1978). We find no abuse of discretion on this issue. The plaintiff was not prejudiced by the ruling and it will not be upset on appeal.

The judgment of the trial court is therefore AFFIRMED.