**GREAT PLAINS MUTUAL INSURANCE COMPANY, INC., Plaintiff,**

v.

**MUTUAL REINSURANCE BUREAU, Defendant.**

No. 89–1226–SAC.

United States District Court, D. Kansas.

July 26, 1993.

Norman R. Kelly, Norton, Wasserman, Jones & Kelly, Salina, KS, for plaintiff.

Clarence L. King, Jr., Hampton, Royce, Engleman & Nelson, Paula J. Wright, Clark, Mize & Linville, Chtd., Salina, KS, for defendant.

MEMORANDUM AND ORDER

CROW, District Judge.

Great Plains Mutual Insurance Company, Inc. (Great Plains) brings this diversity of citizenship action against the defendant, Mutual Reinsurance Bureau (MRB). This dispute between an insurance company and its reinsurer essentially boils down to a factual dispute as to whether the damages caused by weather between August 17, 1987, and August 20, 1987, were caused by one or two

storms. Under the terms of the reinsurance agreement, a "one storm" theory favors Great Plains; a "two storm" theory favors MRB.[1]

This case comes before the court upon MRB's motion to compel (Dk. 32). Great Plains has filed a response. (Dk. 36). MRB did not file a reply.

Having considered the briefs of the parties and the applicable law, the court is now prepared to rule.

### Arguments of the Parties

On March 24, 1993, MRB served Great Plains with a request for production of documents which requested production of the minutes of Great Plains' board of directors' meetings. On April 23, 1993, in response to that request, Great Plains filed an objection to MRB's request for production. Counsel for MRB has filed a certificate of compliance in accordance with D.Kan.Rule 210(j); the certificate sets forth the steps taken by counsel to resolve the issues in dispute.

MRB seeks an order pursuant to Fed. R.Civ.P. 37, compelling Great Plains to produce portions of the minutes of its board of directors' meetings which are relevant to the case at bar, or, in the alternative, an order requiring Great Plains to submit those minutes to the court for *in camera* inspection to determine Great Plains' claim of "trade secrets," "attorney/client privilege" and "work product" doctrine.[2]

In regard to Great Plains' claim that the information is protected by the attorney-client privilege, MRB argues that it is "hornbook" law that communications from an attorney who is acting in his capacity as a director and not as legal counsel are not protected by the privilege. MRB argues that communications it seeks constitute "business advice" and are not privileged. MRB states that Great Plains should not be permitted to "hide" behind its lawyer to make documents non-discoverable. MRB also notes that the mere fact that a lawyer is present during the board of directors' meetings does not make the information privileged.

Great Plains responds that MRB's request for production of documents is "cumbersome, overly broad, vague, ambiguous, inconsistent with Federal Rules of Civil No. 34, and/or not reasonably calculated to lead to the discovery of admissible evidence." Great Plains also claims the documents are privileged as they are "trade secrets," or that they are protected by the "attorney-client privilege" and the "work product" doctrine.

Great Plains has submitted, for *in camera* inspection, the minutes of the Great Plains' board of directors' meetings which are relevant to this case. In addition, Great Plains has filed an affidavit of C.L. Christian, currently the president of Great Plains. During the relevant time at issue, Christian was the manager of Great Plains. In that affidavit, Christian avers that during the board of director's meetings, certain issues pertaining to the August 17, 1987, though August 20, 1987, storm and related issues were discussed with Great Plains' attorney [who also sat on the board of directors], and that those conversations concerned "specific legal instruction, legal opinions, legal strategy and/or legal advice in confidence to these directors regarding this situation and/or the issues in question and there were no other persons present other than directors or this affiant present when these discussion occurred and this information was not disseminated beyond those persons at those meetings and was kept secured and confidential." Although its attorney sat upon its board of directors, Great Plains contends that the information specifically sought by MRB in this

---

**1.** On June 29, 1993, the court entered a memorandum and order (Dk. 38) granting Great Plains' motion to compel (Dk. 28) and denying MRB's request for a protective order (Dk. 30). In Great Plains' motion to compel, it requested certain information pertaining to a storm system that assailed Kansas between August 1, 1986, through August 3, 1986. MRB claimed that information was irrelevant to the case at bar.

The complete factual history of this case is set forth in that order.

**2.** Great Plains' attorney, who is a member of the bar, also sat as a member of its board of directors. The attorney who sat as a member of Great Plains' board of directors is a member of the firm representing Great Plains in its dispute with MRB.

case is protected by the attorney-client privilege.

### Discovery Under the Federal Rules of Civil Procedure

Fed.R.Civ.P. 26(b) provides in pertinent part:

**Discovery Scope and Limits.** Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) **In General.** Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The "Notes of Advisory Committee Rules" concerning the 1946 Amendment to 26(b) state:

The amendments to subdivision (b) make clear the broad scope of examination and that it may cover not only evidence for use at trial but also inquiry into matters themselves inadmissible as evidence but which will lead to the discovery of such evidence. The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case.

In *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978), the Supreme Court stated:

The key phrase in this definition—"relevant to the subject matter involved in the pending action"—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *See Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451, 34 Ohio Ops 395 (1947). Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. *Id.* at 500–501, 67 S.Ct. at 388. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits. (footnote omitted).

The Tenth Circuit has held that "the trial court [has] broad discretion as to the control of discovery, . . . and rulings will not set aside short of an abuse of discretion." *Marsee v. U.S. Tobacco Co.,* 866 F.2d 319, 326 (10th Cir.1989) (quoting *Shaklee Corp. v. Gunnell,* 748 F.2d 548, 550 (10th Cir.1984)) (citations omitted). "In particular, rulings on relevancy of material sought for discovery are within the trial court's discretion." *Marsee,* 866 F.2d at 326.

### The Attorney–Client Privilege and the Work Product Doctrine

The liberal rules of discovery commanded by the Federal Rules of Civil Procedure are tempered by the constraints imposed by the attorney-client privilege and the related work product doctrine. *Guy v. United Health Care Corp.,* No. 92–CV–397, 1993 U.S. Dist. LEXIS 8406, at *3 (S.D.Ohio June 16, 1993); *see* Fed.R.Civ.P. 26(b)(1). Federal Rule of Evidence 501 provides that "the privilege of a witness . . . shall be governed by the principles of law as they may be interpreted by the courts of the United States in light of reason and experience." [3]

**3.** Although not raised by the parties, the court notes under Fed.R.Evid. 501 provides "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person . . . shall be determined in accordance with State law." *See Wylie v. Marley Co.,* 891 F.2d 1463, 1471 (10th Cir.1989) (in diversity action, district court correctly applied Kansas law in determining whether attorney-client privilege is applicable in ruling upon motion in limine); *Guy v. United Health Care Corp.,* No. 92–

The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, *Evidence* § 2290 (McNaughton rev.1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client. *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). It is well settled that corporations may assert the attorney-client privilege. *See Upjohn,* 449 U.S. at 389–90, 101 S.Ct. at 682–83; *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985); John W. Gergacz, *Attorney–Corporate Client Privilege* ¶ 1.04 (2nd ed. 1990).

In *United States v. United Shoe Machinery Corporation,* 89 F.Supp. 357, 358–59 (D.Mass.1950), the district court set forth these elements necessary to establish the existence of the attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*See Fausek v. White,* 965 F.2d 126, 129 (6th Cir.), *cert. denied sub nom.,* —— U.S. ——, 113 S.Ct. 814, 121 L.Ed.2d 686 (1992).[4]

▆▆▆ The attorney-client privilege is to be strictly construed, and is to be extended no more broadly than necessary to effectuate its purpose. *U.S. Ex Rel. Stone v. Rockwell Intern. Corp.,* 144 F.R.D. 396, 399 (D.Colo. 1992) (citations omitted). The party asserting the attorney-client privilege bears the burden of establishing the existence of that privilege. *Guy v. United Health Care Corp.,* No. 92–CV–397, 1993 U.S.Dist. LEXIS 8406, at * 5 (S.D. Ohio June 16, 1993); *Attorney–Corporate Client Privilege* ¶ 3.02[1].

▆▆▆ Although the attorney-client privilege and the work product doctrine are related, they are separate doctrines. The work product doctrine protects from discovery material which was prepared in anticipation of litigation by a party or representative of a party. Fed.R.Civ.P. 26(b)(3).[5] The party asserting

---

CV–397, 1993 U.S.Dist.LEXIS 8406 (S.D.Ohio June 16, 1993) (under Fed.R.Evid. 501, Ohio's law of privilege applies in diversity action in deciding whether information was protected from discovery by attorney-client privilege and work product doctrine). Only one state case from Illinois is cited by the parties; the parties otherwise rely upon only federal cases and do not attempt to discuss relevant state law concerning privileges. In any event, there is no indication, nor is there any suggestion by the parties, that a different result would be compelled under state law. *See, e.g.,* K.S.A. 60–426; *Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisburg Grain Co.,* 250 Kan. 54, Syl. ¶ 3, 824 P.2d 933 (1992) ("K.S.A. 60–426 codifies the general rule that communications found by the judge to have been between a lawyer and his or her client in the course of that relationship and in professional confidence are privileged.").

**4.** The essential elements of the attorney-client privilege are as follows:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. (citations omitted). *Fausek,* 965 F.2d at 129.

**5.** The work product doctrine was first articulated by the Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In *Hickman,* the Supreme Court held that a party could not discover the oral and written statements of witnesses and other information which was obtained by an adverse party's counsel in the course of preparation for possible litigation. The rule announced in *Hickman* is not absolute, and upon good cause shown, a party may discover some types of work product materials. 329 U.S. at 511–12, 67 S.Ct. at 393–94.

work product must carry the burden of proving that the material is protected. *Barclays American Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir.1984). *See Koch v. Koch Industries*, No. 85–1636–C, 1992 WL 223816, 1992 U.S.Dist.LEXIS 14094 (D.Kan. Aug. 24, 1992) (discussing work product doctrine).

"No dispute exists concerning the applicability of the work product doctrine to a corporate client. Only a couple of cases even mention the point and each clearly states that the corporate identity of the client has no bearing on the applications of work product." *The Attorney–Corporate Client Privilege* ¶ 7.01[1][a][i].

## Analysis

█ The court, having reviewed, *in camera*, the relevant minutes of the board of directors' meetings and Christian's affidavit, concludes that the documents sought by MRB are protected by the attorney-client privilege or otherwise non-discoverable as work product.[6] As MRB suggests, the mere fact that an attorney was present during the board of directors' meetings does not, in and of itself, shield disclosure. Moreover, communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, would not be privileged.

A basic element of the attorney-client privilege is that the attorney be in the appropriate role during communication with the client. Attorneys in such diverse occupations as professor or baseball manager do not occupy the role of attorney for privilege purposes as they discuss classroom assignments or the hit-and-run play. Communications must be made in the role of an attorney in order to qualify for the attorney-client privilege. Likewise, a full-time practicing attorney does not imbue all confidential communications with the privilege. Such an attorney may have multiple roles in his activities (*e.g.* business advisor, corporate director, labor negotiator) that are not necessarily attorney-related roles

for the purpose of the privilege. In the representation of corporate interests, counsel might find themselves performing multiple roles. Frequently the roles are closely related, which makes it virtually impossible to isolate a purely legal role from the nonlegal.

*Attorney–Corporate Client Privilege* ¶ 3.02[2][a][iv].

In the case at bar, the information sought by MRB appears to directly relate to legal advice rendered by *Great Plains'* attorney in his capacity as legal advisor. While it is possible that the advice rendered by Great Plains' attorney could conceivably affect Great Plains' success (or failure) as an ongoing entity, this possibility does not convert the legal advice rendered by its attorney into discoverable "business advice"—such a construction of the attorney-client privilege would eviscerate the privilege and essentially render it a nullity in this factual context.

In sum, the court is satisfied that Great Plains' attorney was acting in his capacity as an attorney during the relevant portions of the board meetings. The advice rendered by Great Plains' attorney required the skill and expertise of an attorney. In addition, it appears clear from the minutes of the board meetings that the purpose of the conversations during the board meetings was to render legal advice, and that both Great Plains and its attorney understood that the purpose of the communications was to review and consider legal issues pertaining to Great Plains' litigation with MRB. *See Attorney–Corporate Client Privilege* ¶ 3.02[2][a][iv] (discussing factors to consider in evaluating whether the "lawyer is acting like a lawyer.").

Moreover, the communications at the board meetings were kept confidential and have since remained confidential. Apparently only those persons responsible for making decisions concerning the pending litigation

---

Fed.R.Civ.P. 26(b)(3) substantially codifies the Supreme Court's decision in *Hickman. See Upjohn,* 449 U.S. at 398, 101 S.Ct. at 687; *Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513, 514 n. 2 (5th Cir.1993).

6. Some portions of the minutes are simply not relevant to this case or do not contain information which could be reasonably calculated to lead to the discovery of admissible evidence.

against MRB were advised of the legal advice rendered by Great Plains' attorney.

Several courts considering similar issues have upheld the assertion of the attorney-client privilege and denied discovery of legal advice or information conveyed by a corporation's attorney to its board of directors. *See In Re Grand Jury 90–1,* 758 F.Supp. 1411 (D.Colo.1991) (corporate president's letter to the board of directors discussing legal advice given to president by attorney was protected from disclosure to the grand jury; corporation was client, and the president relayed the information to the board of directors as means of making legal advice available to the corporation); *Shriver v. Baskin–Robins Ice Cream Co., Inc.,* 145 F.R.D. 112, 114 (D.Colo. 1992) (communications between corporate counsel and company personnel are privileged so long as they concern matters within the scope the employee's corporate duties; an otherwise privileged communication by a lawyer to a corporate agent does not lose its protected status simply because the agent then conveys the attorney's opinion to a corporate committee charged with acting on such issues); *Welch v. Board of Directors of Wildwood Golf Club,* 146 F.R.D. 131, 139 (W.D.Pa.1993) (defendant properly asserted attorney-client privilege regarding portions of minutes of its board of directors' meetings as board of directors was seeking legal advice in regard to potential litigation); *Eastern Technologies, Inc. v. Chem–Solv, Inc.,* 128 F.R.D. 74 (E.D.Pa.1989) (after *in camera* review of the unexpurgated minutes of the board of directors' meeting, court concludes that portions of minutes are protected by the attorney client privilege).

In sum, the court finds that the information sought by MRB is protected by the attorney-client privilege. The information sought pertains almost exclusively to pure legal advice rendered by Great Plains' attorney during Great Plains' board of directors' meetings.

IT IS THEREFORE ORDERED that MRB's motion to compel (Dk. 32) is denied.