Robert W. LEWIS, Plaintiff,

v.

UNUM CORPORATION SEVERANCE PLAN, et al., Defendants.

David B. Cirulis, Plaintiff,

v.

UNUM Corporation Severance Plan, et al., Defendants.

Nos. 99–2501–CM, 00–2178–CM.

United States District Court, D. Kansas.

April 4, 2001.

Partick K. McMonigle, Jacqueline L. Mixon, John F. Wilcox, Jr., Cotter & McMonigle, P.C., Kansas City, MO, for plaintiff.

Morris J. Nunn, Morrison & Hecker L.L.P., Kansas City, MO, Jere D. Sellers, Morrison & Hecker L.L.P., Overland Park, KS, William C. Martucci, Eric W. Smith, Shook, Hardy & Bacon L.L.P., Kansas City, MO, B. Simeon Goldstein, Unum Life Insurance Co. of America, Portland, Me, for UNUM Corporation, UNUM Provident Corporation.

Morris J. Nunn, Morrison & Hecker L.L.P., Kansas City, MO, Jere D. Sellers, Morrison & Hecker L.L.P., Overland Park, KS, for UNUM Corporation Severance Plan, UNUM Corporation Officer Severance Plan, Robert C. Cornett.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Plaintiff Cirulis ("Plaintiff") brings this action against Defendants pursuant to the Em-

ployee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), for denying him severance benefits under the UNUM Corporation Officer Severance Plan and the UNUM Corporation Employee Severance Plan. In an Order dated March 26, 2001 (doc. 35 in Case No. 00–2178), District Court Judge Carlos Murguia deferred ruling on limited portions of Plaintiff's Motion for Enforcement of Discovery (doc. 28) and referred those portions of the Motion to the undersigned Magistrate Judge for ruling at the parties' request. For the reasons stated below, the outstanding portions of Plaintiff's Motion are granted in part and denied in part.

## A. Relevant Background

Plaintiff was employed by UNUM for approximately fourteen years, most recently as general manager of UNUM's Kansas City office located in Overland Park, Kansas. On April 5, 1999, Plaintiff was advised by UNUM that his position was being eliminated due to a merger between UNUM and Provident. On June 30, 1999, Plaintiff made demand upon UNUM for severance benefits pursuant to a severance benefit plan identified as the "Officer Plan." On July 27, 1999, Defendants informed Plaintiff that he was ineligible for benefits under the Officer Plan and that his severance benefits would be governed instead by an alternative "Employee Plan." Plaintiff pursued his claim for severance benefits under the Officer Plan through several administrative levels within the organizational structure and on December 13, 1999, Defendants' Benefits Administrative Committee rejected his final appeal and denied him severance benefits under the Officer Plan.

On February 24, 2000, Defendants notified Plaintiff that he was not eligible to receive any severance benefits, even under the alternative Employee Plan, due to his alleged violation of a proposed non-solicitation agreement, upon which receipt of benefits under both the Employee and Officer severance plans were conditioned. On April 24, 2000, Plaintiff filed this ERISA lawsuit to recover benefits allegedly due to him under the Officer and/or Employee Plan.

During the discovery period, Plaintiff propounded Interrogatories and Requests for Production of Documents upon Defendants seeking information and documents produced and reviewed by Robert Cornett, UNUM Corporation Severance Plan Administrator ("Cornett"), in making the decision to deny Plaintiff severance benefits. Defendants objected to these discovery requests, claiming that certain documents responsive to the requests were protected against disclosure by the attorney-client privilege and work product doctrine. After conferring about this discovery dispute as required by local rule, Plaintiff filed the instant Motion for Enforcement of Discovery.

On March 22, 2001, Judge Murguia held a hearing by telephone to address Plaintiff's Motion. Pursuant to discussion at the hearing regarding privilege objections lodged by Defendants in response to Interrogatory 13 and Requests 16 and 17, the Court ordered Defendants to provide copies of the allegedly privileged materials at issue to the Magistrate Judge for *in camera* review. *See* March 26, 2001 Court Order (doc. 35 in Case No. 00–2178–CM). The undersigned Magistrate Judge received the referenced documents from Defendants on March 27, 2001 and, after review of such documents and consideration of the parties' briefs, the Court is now ready to rule.

## B. Discussion

Upon *in camera* review of the documents withheld by Defendants, the Court finds such documents can be placed into the following six categories: (1) written Minutes of the December 13, 1999 Benefit Administrative Committee meeting convened to resolve Plaintiff's appeal; (2) written communications sent to and received from in-house counsel, human resource representatives of the company and the Plan Administrator; (3) written communication between in-house counsel and human resource representatives of the company; (4) written communication from one in-house counsel to another in-house counsel; (5) written transcriptions of voice-mail messages left for in-house counsel from a company representative in the Kansas City Sales Office; and (6) written communication from in-house counsel to a company

representative in the Kansas City Sales Office. Plaintiff argues he is entitled to discover all of the documents at issue, regardless of privilege, because Defendants relied upon such documents in making the decision to deny him severance benefits and he will be unable to shoulder his burden to prove Defendants' decision was arbitrary and capricious without access to them.

### 1. Attorney–Client Privilege

■■■ Because this action arises under a federal statutory scheme, federal law provides the rule of decision as to application of the attorney-client privilege.[1] See *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1368–69 (10th Cir.1997) (federal privilege law applies to federal claims). Under federal common law, the essential elements of the attorney-client privilege are:

(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*Marten v. Yellow Freight Sys., Inc.*, No. 96–2013–GTV, 1998 WL 13244, at *5 (D.Kan. Jan. 6, 1998) (quoting *Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 196 n. 4 (D.Kan.1993)). The privilege "protects confidential communications made by a client to an attorney in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *Marten*, 1998 WL 13244, at *6 (quoting *Jones v. Boeing Co.*, 163 F.R.D. 15, 117 (D.Kan.1995)). The privilege also protects advice given by the lawyer in the course of representing the client. *See Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1370–71 (10th Cir.1997) (finding protection of communications from an attorney to a client in the course of providing legal advice is within the scope of the federal rule). The privilege, however, "is to be extended no more broadly than necessary to effectuate its purpose." *Great Plains Mut. Ins. Co.*, 150 F.R.D. at 196 (citation omitted). The party asserting the privilege bears the burden of establishing its existence. *Id.*

a. *Written Minutes of the December 13, 1999 Benefit Administrative Committee meeting convened to resolve Plaintiff's appeal*

The Benefit Administrative Committee meeting was convened on December 13, 1999 in order to resolve Plaintiff's appeal with regard to the decision to deny him severance benefits under the Officer Plan. Those individuals attending the Benefit Administrative Committee were:

Robert Cornett, Plan Administrator;

Linda Levesque, member of the Benefit Administrative Committee;

Cheryl Morse, UNUM Human Resource representative

Tom Hopkins, member of the Benefit Administrative Committee;

Also present at the meeting by invitation were LaSherril Brown Matthew ("Matthew"), in-house counsel for UNUM and Suzanne Meeker ("Meeker"), outside counsel for UNUM. Minutes of the meeting contemporaneously were taken by Matthew and ultimately typed up and signed by Matthew. Defendants argue Plaintiff is not entitled to discover the meeting Minutes because they

---

**1.** With that said, however, the Court notes that there is no real conflict between federal and Kansas law regarding the attorney-client privilege. *See Hiskett v. Wal–Mart Stores, Inc.*, 180 F.R.D. 403, 405 (D.Kan.1998); *Marten v. Yellow Freight Sys., Inc.*, No. Civ.A. 96–2013–GTV, 1998 WL 13244, at *4–6 (D.Kan. Jan. 6, 1998). "[T]he Kansas statute concerning the attorney-client privilege and its exceptions is typical of the laws of other jurisdictions." *In re A.H. Robins Co.*, 107 F.R.D. 2, 8 (D.Kan.1985) (citation omitted.) Whether the court applies federal or Kansas law generally makes no difference in determining whether the attorney-client privilege applies. *See Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 196 n. 3 (D.Kan. 1993) (citing K.S.A. 60–426; *Wallace, Saunders, Austin, Brown & Enochs, Chtd. v. Louisburg Grain Co.*, 250 Kan. 54, 824 P.2d 933 (1992)).

contain communications relating to legal advice sought by a client and thus are protected by the attorney-client privilege.

"[T]he mere attendance of an attorney at a meeting ... does not render everything done or said at that meeting privileged. For communications at such a meeting to be privileged, they must have related to the acquisition or rendition of professional legal services and must have retained a confidential character." *Case v. Unified Sch. Dist. # 233*, Civ. A. No. 94–2100–GTV, 1995 WL 358198, at *4 (D.Kan. June 2, 1995) (citing *Zullig v. Kansas City Power & Light Co.*, Civ. A. No. 87–2342, 1989 WL 7901, at *3 (D.Kan. Jan. 17, 1989) (quoting *International Tel. & Tel. Corp. v. United Tel. Co.*, 60 F.R.D. 177, 185 (M.D.Fla.1973))). "That clients were at a meeting with counsel in which legal advice was being requested and/or received does not mean that everything said at the meeting is privileged." *Id.* (quoting *Rattner v. Netburn*, No. 88 Civ.2080(GLG), 1989 WL 223059, at *7 (S.D.N.Y. June 20, 1989), aff'd, 1989 WL 231310 (S.D.N.Y. Aug.23, 1989)). "To shield particular communications within a meeting from discovery, the party asserting the privilege must demonstrate that the particular communication was part of a request for advice or part of the advice ... [and] that the communication was intended to be and was kept confidential." *Id.*

▆ Applying the facts to existing law, the attorney-client privilege here does not protect discussions among committee members at the December 13, 1999 Benefit Administrative Committee meeting or the opinions, impressions, and conclusion of committee members based upon events occurring during the meeting. Conversely, it would appear that the attorney-client privilege does protect communications from committee members to counsel for purposes of obtaining legal advice, as well as legal advice given to the committee members by counsel.

With regard to the legal advice at issue in the December 13, 1999 Benefit Administrative Committee meeting, however, the Court notes there is a "fiduciary exception" to the attorney-client privilege. In the ERISA context, the fiduciary exception comes into play when an employer who is the administrator

for an ERISA plan invokes the attorney-client privilege against the plan beneficiaries. *See United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir.1999); *In re Grand Jury Proceedings Grand Jury No. 97–11–8*, 162 F.3d 554, 556–57 (9th Cir.1998); *In re Long Island Lighting Co.*, 129 F.3d 268, 271–72 (2d Cir.1997); *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 645 (5th Cir.1992); *United States v. Evans*, 796 F.2d 264, 265–66 (9th Cir.1986); *Geissal v. Moore Medical Corp.*, 192 F.R.D. 620, 624 (E.D.Mo.2000); *Fischel v. Equitable Life Assurance*, 191 F.R.D. 606, 607–08 (N.D.Cal.2000); *Hudson v. General Dynamics*, 73 F.Supp.2d 201, 202 (D.Conn. 1999); *Johnston v. Dillard Dept. Stores, Inc.*, 152 F.R.D. 89, 93–94 (E.D.La.1993); *Martin v. Valley Nat'l Bank*, 140 F.R.D. 291, 323–25 (S.D.N.Y.1991); *Helt v. Metropolitan Dist. Comm'n*, 113 F.R.D. 7, 9–11 (D.Conn.1986); *Washington-Baltimore Newspaper Guild v. Washington Star Co.*, 543 F.Supp. 906, 910 (D.D.C.1982); *Donovan v. Fitzsimmons*, 90 F.R.D. 583, 586 (N.D.Ill.1981). This fiduciary exception derives from the principle that when an attorney advises a plan fiduciary about the administration of an employee benefit plan, the attorney's client is not the fiduciary personally but, rather, the trust's beneficiaries. *Mett*, 178 F.3d at 1063; *In re Grand Jury Proceedings*, 162 F.3d at 556; *Wildbur*, 974 F.2d at 645; *Fischel*, 191 F.R.D. at 607–08.

Given these parameters, courts generally have held that although the attorney-client privilege does not apply when an attorney advises a plan fiduciary about the administration of an employee benefit plan, the attorney-client privilege does apply when an attorney advises a plan fiduciary regarding issues that do not involve actual administration of the plan. *See Hudson*, 73 F.Supp.2d at 202. "When an administrator is required to justify or to defend against a beneficiary's claims made because of an act of plan administration, the administrator does not act directly in the interests of the disappointed beneficiary but in his own interests or in the interests of the rest of the beneficiaries." *Geissal v. Moore Medical Corp.*, 192 F.R.D. at 624 (citing *Mett*, 178 F.3d at 1063; *Fis-*

*chel,* at 608–09; *Hudson,* 73 F.Supp.2d at 203.)

■ Thus, the case authorities mark out two ends of a spectrum. On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries . . . , the attorney-client privilege remains intact.

*Id.* (citing *Mett,* 178 F.3d at 1064; *Hudson,* 73 F.Supp.2d at 203.)

Here, Defendants argue the legal advice from the attorneys at the meeting was solicited to determine whether they had a sound legal basis for denying Plaintiff severance benefits. Plaintiff argues otherwise. Accordingly, the Court must determine whether the pre-decisional legal advice secured by the Plan Administrator and the Benefit Administrative Committee was for the purpose of plan administration or was for the purpose of defending against the disagreement and claims of Plaintiff in prospective post-decisional litigation against the plan.

■ If the Court finds, as Defendants appear to allege, that the pre-decisional legal advice was secured for the purpose of defending against the disagreement and claims of Plaintiff in prospective post-decisional litigation against the plan, then it follows that whenever the administration of a plan involves the denial of a beneficiary's claim or benefits under a plan, all of the pre-decisional legal advice of counsel would be subject to the attorney-client privilege and not available for review by the beneficiaries of the plan, including the disappointed beneficiary. This contradicts the principle that the Plan's Administrator administers the plan in the beneficiaries' best interests. Because denying benefits to a beneficiary is as much a part of the administration of a plan as conferring benefits to a beneficiary, the prospect of post-decisional litigation against the plan is an insufficient basis for gainsaying the fidu-

ciary exception to the attorney-client privilege.

Based on this discussion, the Court finds that the attorney-client privilege does not protect (1) discussions among committee members at the December 13, 1999 Benefit Administrative Committee meeting; (2) the opinions, impressions, and conclusion of committee members based upon events occurring during the meeting; and (3) pursuant to the fiduciary exception to such privilege, communications from committee members to counsel for purposes of obtaining legal advice or legal advice given to the committee members by counsel.

*b. Written communications sent to and received from in-house counsel, human resource representatives of the company and the Plan Administrator*

Upon *in camera* review of those documents withheld by Defendants that reflect written communications sent to and received from in-house counsel, human resource representatives of the company and the Plan Administrator, the Court finds that, although such communications relate to legal advice sought by a client and thus could have been protected by the attorney-client privilege, the privilege here was waived.

■ It is a well-established principle of law that the attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party. *United States v. Ryans,* 903 F.2d 731, 741 n. 13 (10th Cir.), *cert. denied,* 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990) (citing *United States v. Bump,* 605 F.2d 548 (10th Cir.1979); *United States v. Jones,* 696 F.2d 1069 (4th Cir.1982) ("any voluntary disclosure by the client to a third party waives the privilege")). This is true even if the disclosure is inadvertent. *Id.* (citations omitted). "[T]he confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant." *United States v. Ryans,* 903 F.2d 731, 741 n. 13 (10th Cir.1990) (citation omitted).

Here, the substance of the attorney's advice was willingly disclosed to the Plan Administrator.

In fact, most of the written communications falling within this category of documents explicitly reflect the fact that they were disclosed to the Plan Administrator (i.e., "To: Robert Cornett," "From: Robert Cornett" or "CC: Robert Cornett"). Based on the Court's discussion, *infra*, the Plan Administrator is a fiduciary acting on behalf of the beneficiaries of the plan and is not acting in his capacity as a company representative. Thus, the Court finds that the attorney-client privilege here has been waived because the substance of an otherwise privileged communication was intentionally disclosed to a third party.

Notably, there is one written communication within this category of documents that does not explicitly reflect the fact that it was disclosed to the Plan Administrator, but instead is referred to in a separate memorandum as being sent to Cornett as Plan Administrator. In an Internal Memorandum dated December 1, 1999 (*in camera* documents 19 and 22), Cheryl Morse ("Morse") sent the Plan Administrator, among other individuals, numerous documents to review in preparation for the Benefit Administrative Committee meeting scheduled to resolve Plaintiff's appeal of UNUM's denial of benefits under the Officer severance plan. One category of documents is listed as "Emails from legal defining officer." Notably, one of the 26 documents reviewed *in camera* by the Court is a written e-mail message dated June 3, 1999 from Simeon Goldstein, UNUM in-house counsel, to numerous human resource representatives within the company regarding the definition of "officer" within the Officer Severance Plan. It appears that this is the document Morse sent to the Plan Administrator and Defendants do not assert otherwise.

"Parties objecting to discovery on the basis of the attorney-client privilege bear the burden of establishing that it applies." *ERA Franchise Systems, Inc. v. Northern Ins. Co. of New York,* 183 F.R.D. 276, 278 (D.Kan.1998) (citations omitted). "They must make a 'clear showing' that the assert-

ed objection applies." *Id.* (citations omitted). "To carry the burden, they must provide sufficient information to enable the court to determine whether each element of the asserted privilege is satisfied." *Id.* Therefore, it is Defendants who carry the ultimate burden to establish that the attorney-client communications are protected by the privilege and, because absence of waiver is an element of the privilege, it is Defendants who have the burden to establish that they have not waived such privilege.

The Court finds Defendants have failed to establish they did not waive the attorney-client privilege when Morse sent the Plan Administrator documents reflecting "Emails from legal defining officer" to review in preparation for the Benefit Administrative Committee. Accordingly, the Court finds that the attorney-client privilege has been waived not only for those written communications explicitly sent to and from in-house counsel, human resource representatives of the company and the Plan Administrator, but also for those documents reflecting "Emails from legal defining officer"—because the substance of all of these otherwise privileged communications were intentionally disclosed to a third party.

c. *Written communications between in-house counsel and human resource representatives of the company; Written communications between one in-house counsel and another in-house counsel; Written transcriptions of voice-mail messages left for in-house counsel from a company representative in the Kansas City Sales Office; Written communication from in-house counsel to a company representative in the Kansas City Sales Office*

Upon *in camera* review of those documents withheld by Defendants that reflect written communications between in-house counsel and human resource representatives of the company, written communications from one in-house attorney to another in-house attorney, written transcriptions of voice-mail messages left for in-house counsel from a company representative in the Kansas City Sales Office and written communication

from in-house counsel to a company representative in the Kansas City Sales Office, the Court finds that all such communications relate to legal advice sought by a client and thus are protected by the attorney-client privilege.[2]

2. Work Product Doctrine

Although Defendants' privilege log fails to designate whether each privilege claimed is based on the attorney-client privilege or the work product doctrine, Defendants assert in their brief that the written Minutes of the December 13, 1999 Benefit Administrative Committee meeting convened to resolve Plaintiff's appeal and the written communication sent to and received from in-house counsel, human resource representatives of the company and the Plan Administrator are protected from disclosure by the work product doctrine because they were prepared in anticipation of litigation. Defendants' Memorandum in Opposition to Plaintiff's Motion for Enforcement of Discovery at p. 11, n. 8 (doc. 11) ("The advice provided and the notes taken by counsel with respect to [plaintiff] occurred under circumstances where it was evident that litigation was going to occur in the event of a denial to plaintiff. Specifically, counsel for plaintiff had been in the picture for a considerable period of time, had threatened litigation, and had already filed litigation on behalf of another former UNUM employee.").[3] The Court finds otherwise.

■ As the party asserting work product protection, Defendants have the burden of establishing work product protection. *See McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 683 (D.Kan.2000); *Boyer v. Board of County Comm'rs*, 162 F.R.D. 687, 688 (D.Kan.1995). To carry that burden, Defendants must make a "clear showing" that the asserted objection applies. *See McCoo*, 192 F.R.D. at 683; *Ali*

2. The fiduciary exception to the attorney-client privilege is not applicable to the communications referenced in this subsection because no fiduciary participated in, or was copied on, these communications.

3. Defendants make a claim of work product protection for all documents under the Court's scrutiny. Because the Court makes a finding, *supra*, that written communications between in-house counsel and human resource representatives of

*v. Douglas Cable Communications, Ltd. Partnership*, 890 F.Supp. 993, 994 (D.Kan. 1995). A "blanket claim" as to the applicability of the work product doctrine does not satisfy the burden of proof. *McCoo*, 192 F.R.D. at 680. It is well settled that the party seeking to invoke work product immunity has the burden to establish *all elements* of the immunity and that this burden can be met only by an evidentiary showing based on competent evidence. *Id.* "That burden cannot be 'discharged by mere conclusory or ipse dixit assertions.'" *Id.* (quotations and citations omitted). A party's failure to meet this burden when the trial court is asked to rule upon the existence of the work product immunity is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984); *McCoo*, 192 F.R.D. at 680.

■ To establish work product protection, Defendants must show that "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party." *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D.Kan. 2000) (citations omitted). Defendant appear to have established elements one and three—the items sought to be protected are documents and they were prepared by employees of Defendant. The second element is in dispute: were the documents prepared in anticipation of litigation?

This second element was extensively analyzed by Magistrate Judge Rushfelt in *Marten v. Yellow Freight System, Inc.*, No. 96–2013–GTV, 1998 WL 13244 (D.Kan. Jan. 6, 1998). The Court stated:

the company, written communications between one in-house counsel and another in-house counsel, written transcriptions of voice-mail messages left for in-house counsel and written communication from in-house counsel to a company representative in the Kansas City Sales Office are all protected from disclosure by the attorney-client privilege, the Court finds it unnecessary to determine protection under the work product doctrine as well.

The work product standard has two components. The first is what may be called the "causation" requirement. This is the basic requirement of the Rule that the document in question be produced because of the anticipation of litigation, i.e., to prepare for litigation or for trial. The second component is what may be termed a "reasonableness" limit on a party's anticipation of litigation. Because litigation can, in a sense, be foreseen from the time of occurrence of almost any incident, courts have interpreted the Rule to require a higher level of anticipation in order to give a reasonable scope to the immunity.

The court looks to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product. Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine. The inchoate possibility, or even the likely chance of litigation, does not give rise to work product. To justify work product protection, the threat of litigation must be "real and imminent." To determine the applicability of the work product doctrine, the court generally needs more than mere assertions by the party resisting discovery that documents or other tangible items were created in anticipation of litigation.

*Id.,* at \*10 (citations and quotations omitted).

██ While litigation can result from any fiduciary act, the Plan Administrator's acts of securing legal advice for the plan, and the advice rendered, prior to the plan's decision regarding benefits cannot be said to be in anticipation of litigation. *See Geissal v. Moore Medical Corp.,* 192 F.R.D. 620, 625 (E.D.Mo.2000). Such acts occurred before the "objected to" decision was final and the divergence of interests occurred. *Id.* (citing *Harper v. Auto–Owners Ins. Co.,* 138 F.R.D. 655, 662 (S.D.Ind.1991)). The fact that litigation later resulted does not change the ordinary business nature of the attorney's legal advice into advice rendered in anticipation of litigation. *Id.* (citing *Garfinkle v. Arcata Nat'l Corp.,* 64 F.R.D. 688, 690 (S.D.N.Y. 1974)). Thus, the Court concludes that the pre-decisional advice and opinions of counsel set forth within the written Minutes of the December 13, 1999 Benefit Administrative Committee meeting—as well as written communication sent to and received from in-house counsel, human resource representatives of the company and the Plan Administrator—are not protected from discovery by the work product doctrine.

## C. Conclusion

Based on the discussion above, the outstanding portions of Plaintiff's Motion (doc. 35 in Case No. 00–2178) are granted in part and denied in part:

- The motion for enforcement of discovery is granted as to the written Minutes of the December 13, 1999 Benefit Administrative Committee meeting convened to resolve Plaintiff's appeal (*in camera* documents 17, 18, 20, 21, 22, 24, 25 and 26);

- The motion for enforcement of discovery is granted as to written communication sent to and received from in-house counsel, human resource representatives of the company and the Plan Administrator (*in camera* documents 10, 11, 13, 14, 19, 23 and the top three inches [3″] of *in camera* document 12); and

- The motion for enforcement of discovery is denied as to *in camera* documents 1, 2, 3, 4, 5, 6, 7, 8, 9, 15, 16 and the bottom eight inches [8″] of *in camera* document 12 on the grounds that such documents are protected from disclosure by the attorney-client privilege.

IT IS SO ORDERED.