Donald JOHNSTON

v.

**DILLARD DEPARTMENT STORES, INC., et al.**

Civ. A. No. 92–0740.

United States District Court, E.D. Louisiana.

Nov. 1, 1993.

---

William Lurye and Nancy Picard, Robein, Urann & Lurye, Metairie, LA, for plaintiff Donald W. Johnston.

Dermot S. McGlinchey, Henri Wilbrette, III, and James M. Garner, McGlinchey, Stafford & Lang, New Orleans, LA for defendants Dillard Dept. Stores, Inc. and Dillard Dept. Stores Long Term Disability Ins. Plan.

Charles L. Chassaignac, George Phillip Shuler, III, Robert B. Landry, III, Chaffe, McCall, Phillips, Tolen & Sarpy, New Orleans, LA, and Merritt B. Chastain, Jr., Smitherman, Lunn, Chastain & Hill, Shreveport, LA, for Colonial Life & Acc. Ins. Co. and Duncanson & Holt Services, Inc.

CHARLES SCHWARTZ, Jr., District Judge.

Before the Court is a discovery matter pending between plaintiff, Donald Johnston ("Johnston") and defendant Colonial Life & Accident Insurance Company ("Colonial"), to wit: Colonial's Motion to Review the Magistrate's discovery ruling entered October 7, 1993 ordering Colonial to produce the minutes of the January 6, 1992 meeting of Colonial's claims committee which culminated in its denial of Johnston's claim for long term disability benefits under the Dillard Long Term Disability (LTD) Plan (effective June 1, 1990) insured by Colonial. For the reasons set forth herein below the Court affirms the Magistrate Judge's ruling ordering Colonial to produce the minutes of the January 6, 1992 claims committee, convened for the purpose of deciding whether or not it would deny Johnston's claim for LTD benefits.

BACKGROUND:

On May 28, 1991, Johnston filed a claim for disability benefits with Dillard LTD Plan insured by Colonial. On January 27, 1992,

Colonial denied his claim. Johnston filed suit on February 27, 1992, seeking payment of those benefits. Johnston has alleged, among other things, that Colonial has breached its fiduciary duties to him and allowed self-interest to infect its decisions in this matter.[1] It is undisputed that ERISA mandates fiduciaries to discharge their duties in the interests of all participants.

As previously mentioned the initial decision to deny Johnston's claim was made in a committee meeting held on January 6, 1992. The committee was comprised of the following individuals: V. Darlene Edgell (a Colonial claims examiner); Gloria Hensen (a Colonial claims manager); Jeff Ream (Colonial's vice-president of claims); and Frank Manning (Colonial's assistant vice-president, assistant corporate secretary, and assistant general counsel). The minutes of the January 6, 1992 claims committee meeting were taken by Edgell at the direction of Manning. Edgell provided Manning with a copy of the minutes taken.

Now turning back to the instant lawsuit which was filed on February 27, 1992, subsequent to Colonial's first denial of benefits, as discovery proceeded Colonial identified certain documents including the January 6, 1992 minutes of the claims committee meeting. Colonial objected to the production of those minutes on the basis that they were subject to the attorney-client privilege. A hearing was conducted on December 8, 1992 with Magistrate Judge Moore *via* telephone. Magistrate Judge Moore orally informed the parties of his decision to deny the motion to compel and his order reflecting that ruling issued approximately a week later on December 18, 1992.[2] Within the context of the telephone hearing Magistrate Judge Moore informed the parties that he would reconsider his ruling if facts revealed through later discovery so warranted.[3]

It is apparent that Magistrate Moore's order represented only a temporary fix, since discovery was ongoing and that Colonial's officers and employees had not yet been deposed as of the date of the telephone hearing. That is precisely why there were no objections to the ruling filed on behalf of the plaintiff. Moreover, and as previously mentioned two days after the issuance of Magistrate Moore's written order denying the plaintiff's motion to compel, Colonial moved to remand the matter to the Plan Administrator to consider additional evidence. It is apparent to the Court that the parties understood that after further discovery, the issues inherent in plaintiff's original motion to compel might have to be revisited.

After the second denial of Johnston's claim for benefits by letter dated May 10, 1993, Colonial was served with Plaintiff's Third Set

1. In opposition to Colonial's Motion for Summary Judgment in this matter, which motion is presently under submission, Johnston argues that the instant case is similar to the case which was the subject of the recent Fifth Circuit decision in *Jones v. Sonat, Inc., Master Employer Benefits Plan Administrative Committee,* 997 F.2d 113 (5th Cir.1993). In that case, the Fifth Circuit held that an employee benefit plan committee abused its discretion in deciding Jones' claim for benefits, finding that there was a significant potential conflict of interests since all of the committee members were corporate officers, because the committee's decision advanced the corporation's conflicting interests at the expense of the beneficiary, and because the committee failed to justify its decision in terms of greater benefits to the class of plan beneficiaries and participants. *Id.* In support of its motion for summary judgment, Colonial has offered the affidavit of its in-house counsel Frank Manning which purports to relate the Colonial's claims committee's investigation of Johnston's claim, states what did and did not have an effect on the way Colonial handled Johnston's claim, and that Dillard's employ-

ee Tammy Barnes was not an agent of Colonial and thus, was without authority to waive in part or in whole the Plan's provisions.

2. Two days later, on December 22, 1992, Colonial moved to remand the matter to the Plan administrator to consider additional evidence.

3. At the time of the December 7, 1992 telephone hearing the nature of the January 6, 1992 committee meeting minutes had not yet been revealed. The depositions of Colonial's officers and employees took place thereafter on December 8, 9, and 10, 1992. In fact over 25 depositions were taken during the following months. On December 22, 1992, Colonial moved the Court to remand the matter to the Plan Administrator based upon new evidence. The following month, on January 27th, 1993, this Court granted Colonial's motion, remanded the matter to the Plan Administrator, and stayed the proceedings. It was not until May 10, 1993, that Colonial issued its decision on remand denying for a second time Johnston's claims for LTD benefits.

of Interrogatories and Fifth Request for Production of Documents. On July 8, 1993 Colonial's first response to the aforesaid discovery requests was received by plaintiff, however, its supplemental response was not received by plaintiff's counsel until September 7, 1993. Shortly thereafter, on September 21, 1993 plaintiff filed his motion to compel Colonial to produce certain documents, including the January 6, 1992 minutes of the claims committee meeting. The hearing on plaintiff's second motion to compel was set before Magistrate Fonseca on October 6, 1993, following which the Magistrate ordered Colonial to Produce the documents for *in camera* inspection the same day.[4]

By minute entry order entered October 7, 1993, and after having reviewed the documents *in camera*, Magistrate Fonseca granted the plaintiff's Motion to Compel in part ordering Colonial to produce the January 6, 1992 claims committee meeting minutes.[5] On October 15, 1993, Colonial filed its Objections and Motion to Review the October 7, 1993 Minute Entry, claiming: (1) no further discovery should be permitted at this late date; (2) Magistrate Judge Moore determined in a prior ruling that the plaintiff is not entitled to the documents which was not appealed by plaintiff; (3) that the January 6, 1992 notes are protected by the work product doctrine; and (4) the attorney client privilege applies because Colonial's in-house counsel participated in the claims committee meeting.

The Court here notes that it presently has pending before for decision several motions for summary judgment including plaintiff's and Colonial's and that the January 6, 1992 committee meeting minutes bear critically on the issues addressed by the motions for summary judgment. In point of fact, the January 6, 1992 minutes reflect the committee's considerations at the time it made the decision to deny Johnston's claim for LTD benefits including the Committee's position on

whether it considered Dillard as its agent or not.[6] In an affidavit submitted in support of Colonial's Motion for Summary Judgment, Manning testifies that Dillard's employee, Tammy Barnes, has never been an agent or employee of Colonial and was without authority to waive its rights under the policy in part or in whole or amend any of the provisions thereof. The minutes of the committee's meeting on January 6, 1992, a contemporaneous business record of the committee's meeting, constitutes perhaps, the best of evidence of the its actual considerations at the time it decided to deny plaintiff's claim for benefits.

ANALYSIS:

■ A district court will disturb a Magistrate's ruling on a nondispositive matter only when the ruling is clearly erroneous or contrary to law.[7] A party challenging the Magistrate's actions in a non-dispositive matter has the burden of showing that the Magistrate's ruling was clearly erroneous or contrary to law.

The Court agrees with the Magistrate's finding that the January 6, 1992 committee meeting minutes "concern the issue of whether the Johnston's claim should be denied."[8] The January 6, 1992 printed notes are most obviously minutes of a meeting of the committee which culminated in Colonial's decision to deny Johnston's claim. Colonial's good faith in its denial of Johnston's claim is without a doubt a key issue in these proceedings, as is the true character of the relationship between Dillard and Colonial, be that agency or otherwise.

■ Most obviously the minutes of the January 6, 1992 meeting were prepared in the ordinary course of Colonial's business— that is, deciding whether or not to pay the instant claim for long term disability benefits. While the Court is of the opinion, as is the Magistrate Judge, that the notes are not privileged, i.e., either attorney client or work

---

4. See Minute Entry Order entered October 7, 1993 (Rec.Doc. 154).

5. See Minute Entry Order, entered October 7, 1993 (Rec.Doc. No. 151).

6. The second denial of benefits by Colonial on remand varies only slightly and perhaps only insignificant part from the first. In most re-

spects the second denial appears to be an instant replay of the first.

7. 28 U.S.C. 636(b)(1)(A); FRCP Rule 72(a).

8. See Minute Entry Order entered October 7, 1993 (Rec.Doc. 151).

product, Colonial has most apparently voluntarily disclosed the contents of that meeting, and thus, waived any privilege it may have regarding same. (1) Colonial's employees have testified as to the substance of their conversations with Colonial's in-house counsel Manning; and (2) Manning has submitted an affidavit which Colonial has offered in support of its motion for summary judgment testifying as to what evidence was and was not considered in reviewing Johnston's claims.

It was Colonial's decision to place Manning on its claims committee. The fact that its in-house counsel participated in the claims committee's investigation leading up to the decision to deny Johnston's claims does not shield that document from discovery. The January 6, 1992 minutes reflect the committee's deliberations regarding its decision to deny Johnston's claims. Moreover, the actual committee notes, which this Court has reviewed *in camera,* do not appear to reflect the *mental impressions* or *trial strategy* of an attorney preparing for trial, but rather, the minutes reflect the deliberations and considerations of the committee, which eventually decided to deny Johnston's claim. The contemporaneous notes of what transpired during the meeting may well constitute the best evidence of what transpired. The proceedings of that committee on which Manning served are directly at issue in this case.

■ Colonial has identified Manning, Edgell, Henson, and Ream, all of whom attended the January 6, 1992 meeting, as the persons who made the decision to deny Johnston's claims. Manning was acting at all pertinent times as a claims examiner and a Plan fiduciary. In fact, all of the individuals at the January 6, 1992 meeting participated in making the decision to deny benefits. Having done so, they are all fiduciaries within the meaning of ERISA, 29 U.S.C. § 1002(21)(A)(i), and bound to act in the best interests of participants/beneficiaries, and more particularly, Mr. Johnston whose claim was under consideration. Considering the

foregoing, there could hardly be an expectation that such communications would be kept in confidence from the intended beneficiary Johnston.

In *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 645 (5th Cir.1992), the Fifth Circuit restated the controlling law, to wit:

> When an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator. *Washington–Baltimore Newspaper Guild, Local 35 v. Washington Star Co.,* 543 F.Supp. 906, 909 (D.D.C.1982). Therefore, an ERISA fiduciary cannot assert the attorney-client privilege against the plan beneficiary about legal advice dealing with plan administration.

In *Wildbur,* plaintiff sought to depose all of the ARRP and STAP committee members, ARCO's in-house counsel and ARCO's trial counsel. ARCO moved to quash the depositions on the grounds of relevance, the attorney work product doctrine, and the attorney client privilege. The magistrate judge allowed plaintiffs to depose the ARRP and STAP committee members about all phases of the administrative process *and allowed plaintiff to depose ARCO's in house counsel about events before the plaintiff filed this action.* The magistrate quashed only the deposition of ARCO's trial counsel after concluding that his communications with the plan administrator were protected by the attorney-client privilege.[9]

■ In the present case, Colonial made its first decision on January 6, 1992 to deny plaintiff's claim for benefits. Suit was not filed by the plaintiff until February 27, 1992. Colonial's "reconsidered" decision to deny Johnston's claim for benefits was made in May of 1993. On both occasions, but more particularly the first, Manning (Colonial's in-house counsel) participated in the decision to deny Johnston's claim. It is the law of this

---

**9.** The magistrate judge found that there had never been a mutuality of interests that would create a fiduciary relationship with ARCO's trial counsel and the plan fiduciary and because the factual findings were that trial counsel's communica-

tions with the plan administrator were for the purpose of defending a pending lawsuit and did not deal with Plan Administration. *Wildbur,* 974 F.2d at 645.

Circuit that Colonial's factual conclusions supporting its determination to deny benefits may be reviewed by the trial court under an abuse of discretion standard,[10] which will necessarily entail both a review of the "factual background of the determination and any inferences of lack of good faith." [11]

The Court is of the opinion that Colonial had no reason to believe that its minutes of the claims committee meeting of January 6, 1992 would be kept confidential. Colonial has made no showing that there was confidential client information exchanged during that meeting. Moreover, participants in that meeting, including Manning, have disclosed the subject of that meeting (i.e., determination of Johnston's claim) and their discussions which entailed a review of the evidence gathered by Colonial's claim's staff. The information which was the subject the topic of discussion in the January 6, 1992 meeting of the Colonial's claims committee has not been held in confidence by Colonial. To the contrary, committee members have testified in deposition as to the discussions that took place in that meeting and Manning (Colonial's in-house counsel) has testified *via* affidavit on the subject.[12] Considering that it was Colonial's decision to place Manning on the claims committee investigating Johnston's claim, it cannot thereby create a blanket obstruction to discovery of the committee's investigations.

Colonial has placed the substance of the January 6, 1992 meeting at issue by submitting the affidavit of Manning in support of its motion for summary judgment. Moreover, the considerations of the committee are directly at issue by virtue of ERISA and as Manning himself testified, the document at issue was simply minutes of the meeting.

The committee meeting was convened precisely for the purpose of considering Johnston's claim for benefits, whether or not litigation was envisioned in the future. The minutes of any such meeting, convened for the purpose of deciding plaintiff's claim for benefits, thus, can hardly be characterized as "work product."

Colonial has failed to make a showing that *confidential* client information was exchanged during the January 6, 1992 meeting. Participants in the meeting, including Manning, have testified regarding the subject of the meeting.

Accordingly, and considering the Court's opinion that the Magistrate Judge's ruling is neither clearly erroneous nor contrary to law,

IT IS ORDERED that the motion of Colonial to review the Magistrate Judge's ruling of October 7, 1993 is DENIED and the aforesaid ruling of the Magistrate Judge is hereby AFFIRMED.

IT IS FURTHER ORDERED that plaintiff's Motion for Contempt is DENIED.

IT IS FURTHER ORDERED that plaintiff's Motion to Strike is DISMISSED AS MOOT.

IT IS FURTHER ORDERED that defendant Colonial Life and Accident Insurance Company shall make a copy of the January 6, 1992 minutes of its claims committee meeting regarding plaintiff's claim for LTD benefits available to the plaintiff no later than Wednesday, November 3, 1993 at 5:00 p.m.

---

10. The Court does not here determine whether the Court will utilize either the stricter standard (i.e., abuse of discretion) or a *de novo* standard, or both, at the time of trial regarding the various issues inherent in plaintiff's complaint. The Court's intention here is rather indicative of its opinion that even utilizing the strictest standard of review, the document in question may well be relevant to this Court's determination.

11. *Wildbur*, 974 F.2d at 638. In *Wildbur*, the court stated:
> If a reviewing court concludes that the administrator's interpretation of the plan was incorrect and proceeds to the second step of our abuse of discretion analysis, three additional

factors become relevant. One of these (which really involves two separate questions), the factual background of the determination and any inferences of lack of good faith, may, at least on the question of good faith, require a court to review evidence that was presented to the administrator. This is especially true because we have instructed district courts to evaluate inferences of lack of good faith on a sliding scale.... *Id.*

12. Manning's affidavit was submitted to the Court by Colonial in support of its motion for summary judgment.