Peter D. FISCHEL, et al., Plaintiffs,

v.

The EQUITABLE LIFE ASSURANCE,
Defendant.

No. C96–4204 VRW (BZ).

United States District Court,
N.D. California,
San Francisco Division.

March 7, 2000.

Dennis J. Woodruff, Woodruff & Singman, Oakland, CA, Michael P. Malakoff, Ellen M. Doyle, Malakoff Doyle & Finberg, Pittsburgh, PA, Herbert E. Adelman, Adelman & Adelman, Walter H. Fleischer, Washington, D.C., for plaintiffs.

Jeffrey D. Wohl, John H. Kanberg, Tanya Herrera, Orrick Herrington & Sutcliffe, LLP, San Francisco, CA, Wilbur Boies, Nancy G. Ross, McDermott Will & Emery, Chicago, IL, for defendants.

## ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL

ZIMMERMAN, United States Magistrate Judge.

Plaintiffs move to compel defendant The Equitable Life Assurance Society to produce 184 documents withheld on grounds of attorney-client privilege and work product. Plaintiffs are former Equitable life insurance agents who allege that defendant violated the Employee Retirement Income Security Act of 1974 ("ERISA") and its contractual obligations by eliminating certain methods for qualifying for continued health care coverage under the Equitable's health care plan. Specifically, plaintiffs claim that the Equitable breached its fiduciary duties either by falsely representing that agents would receive benefits after meeting certain production requirements, or by repudiating its promise to provide such benefits. In the course of conducting discovery, this dispute arose over defendant's response to plaintiffs' request for production of documents.

The documents in question comprise an assortment of communications between The Equitable and its inside and outside counsel that relate in some way to the health care plan. In opposition to this motion to compel, defendant argues that all of the documents are subject to the attorney-client privilege and certain of the documents are subject to the work product doctrine. Plaintiffs contend that the documents fall within the "fiduciary exception" to the attorney-client privilege. Because I was unable to resolve the parties' dispute on the basis of defendant's privilege log, I ordered the defendant to produce sample documents to the Court for *in camera* review, so I could determine how and whether the exception applied.

■ The attorney-client privilege shields from disclosure any confidential communications between a client and its attorney. In the Ninth Circuit the privilege is jealously guarded. It is "perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir.1997). Once the privilege has been established, the party seeking to pierce it bears the burden of showing an exception exists. *See, e.g., id.* at 509.

■ Plaintiffs invoke the fiduciary exception to the attorney-client privilege. The fiduciary exception first appears in English trust law, and arises out of the special fiduciary duties a trustee owes to the beneficiaries of the trust. The leading American case to apply the exception ruled that a memorandum containing legal advice about a trust's state tax obligations should be produced to the trust's beneficiaries in a subsequent lawsuit by the beneficiaries to surcharge the

trustees for the resulting tax liability. *See Riggs Nat'l Bank v. Zimmer,* 355 A.2d 709 (Del.Ch.1976). In ordering production, the Chancellor was impressed by the facts that the trust paid for the advice, that there were no proceedings anticipated or pending against the trustees at the time the advice was sought, and that the memorandum did not provide advice to the trustees personally. *See id.* The Chancellor recognized two distinct rationales for the exception: (1) that the beneficiaries to the trust were the "real" clients of the attorneys advising the trustees, and (2) that "[t]he policy of preserving the full disclosure necessary in the trustee-beneficiary relationship is here ultimately more important than the protection of the trustees' confidence in the attorney for the trust." *Id.*

In the ERISA context, the fiduciary exception comes into play when an employer who is the trustee for an ERISA plan invokes the attorney-client privilege against the plan beneficiaries. Courts applying the exception in ERISA cases have struggled to articulate a simple rule that incorporates what are, in some ways, two competing rationales from *Riggs.* Until recently, the fiduciary exception had developed into the following cumbersome formulation: when an attorney advises a fiduciary about a matter dealing with fiduciary matters—such as plan administration—the attorney's clients are the beneficiaries and the exception applies; but when an attorney advises a fiduciary on matters pertaining to nonfiduciary duties—such as plan design, amendment, and termination—the attorney's client is the employer and the privilege is preserved. *See In re Long Island Lighting Company,* 129 F.3d 268, 271–72 (2d Cir.1997); *United States v. Evans,* 796 F.2d 264, 266 (9th Cir.1986); *Washington–Baltimore Newspaper Guild v. Washington Star Co.,* 543 F.Supp. 906, 909 (D.D.C.1982).

Two essential problems made this rule difficult to apply. First, the cases provided little guidance as to how to distinguish between fiduciary and nonfiduciary activities. Although the cases seemed to agree that fiduciary activities encompass matters of "plan administration," the scope of plan administration itself is a matter of continuing redefinition. *See, e.g., Varity Corp. v. Howe,*

516 U.S. 489, 505, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (holding that making intentional representations about the future of plan benefits may be an act of plan administration). Second, they failed satisfactorily to address the situation in which a trustee sought advice regarding its own liability as to matters that pertain to its fiduciary obligations, such as plan administration.

In a recent decision, the Ninth Circuit addressed this latter situation. *United States v. Mett,* 178 F.3d 1058 (9th Cir.1999), reversed the trial court's ruling, made during the criminal prosecution of two ERISA plan trustees, admitting legal memoranda from their then-counsel which advised them of their potential civil and criminal liability for withdrawing funds from the pension plan.

The Court recognized that the cases analyzing the fiduciary exception mark out two ends of a spectrum:

> On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact.

*Id.* at 1064. The Court then found that the legal advice clearly fell on the latter end of this spectrum because the advice was not intended for the benefit of the plan or the beneficiaries, and was not advice regarding plan administration. *See id.*

Although it did not explore the interior of this spectrum, the Court's analysis provides some guidance for cases that fall within it. Specifically, the Court rejected an expansive construction of the fiduciary exception that would allow disclosure of all documents that relate to a trustee's fiduciary obligations to administer the plan. First, the Court observed that if the test for determining the applicability of the exception was whether the advice related to plan administration, the exception could eclipse the attorney-client privilege in its entirety: "After all, any legal

advice concerning an ERISA plan could be construed as relating, at least indirectly, to the administration of the plan." *Id.* at 1065. Second, the Court focused on what it termed the "justifying rationale" for the exception—that is, the legal fiction that the trustee in seeking advice is simply a proxy for the beneficiaries. *See id.* Accordingly, the Court found that "where a fiduciary seeks legal advice for her own protection, the core purposes of the attorney-client privilege are seriously implicated and should trump" the beneficiaries' rights to disclosure. *Id.*

Ultimately, the Court articulated a more limited formulation of the fiduciary exception: that while generally, the fiduciary exception applies to matters of plan administration, the attorney-client privilege reasserts itself as to any advice that a fiduciary obtains to protect itself from liability. *See id.* at 1066. The one reported federal case that has followed *Mett* used the same analysis to find that documents which advised ERISA trustees about their potential liability for providing misinformation to beneficiaries about future plan amendments were privileged. *See Hudson v. General Dynamics,* 73 F.Supp.2d 201, 203 (D.Conn.1999).

I read *Mett* as endorsing a test that focuses on the intended recipient of the advice and the purpose for which it is sought. Another way of putting it is that *Mett* limits the scope of advice that relates to "plan administration" by excluding from it any advice whose goal is to advise the trustee about the legal implications of actions and decisions undertaken while performing its fiduciary obligations. Regardless of how it is framed, this test offers several advantages over the *Long Island Lighting* test. First, it is more workable. As two commentators have noted, "the use of a fiduciary-nonfiduciary activity distinction as the touchstone for a privilege inquiry in discovery is awkward at best, simply because the existence of a fiduciary duty may be an ultimate issue that simply cannot be resolved in the course of discovery disputes." Craig C. Martin & Matthew H. Metcalf, *The Fiduciary Exception to the Attorney–Client Privilege,* 34 Tort & Ins. L.J. 827

(1999). Plaintiffs urge the Court to find that the scope of the fiduciary exception should correspond with the scope of the fiduciary duties as defined in non-discovery cases, such as *Varity.* However, as I have noted, the scope of fiduciary duties is a subject of a developing jurisprudence. Unsurprisingly, the parties themselves cannot agree on where the distinction between plan administration, and plan design and amendment, should lie. A test that explicitly limits the scope of what is considered plan administration therefore promotes certainty in applying the exception.

Second, in the ERISA context, a well-defined attorney-client privilege encourages a trustee to seek advice about its potential liability, and therefore advances important policy interests. Were it otherwise, trustees might well be reluctant to seek legal advice in what can be a complex area of law. In the long run, the beneficiaries would suffer from having their plan designed, amended or administered in a legal vacuum. In addition, a strong attorney-client privilege minimizes the possibility that a trustee will be dissuaded from serving out of fear that her lawyer will be used against her, or will insist on contractual provisions to reduce accountability. *See Mett,* 178 F.3d at 1065.

Finally, any test that delimits what falls into the amorphous category of "plan administration" should be consistent with the default rule in the Ninth Circuit that "hard cases should be resolved in favor of the privilege." *Id.*

With these principles in mind, I turn to the documents that are the subject of this dispute. Having reviewed *in camera* the thirteen sample documents,[1] I **HEREBY ORDER** the following:

█ 1. Plaintiffs' motion is **DENIED** with respect to all documents that comprise legal advice from outside or inside counsel to management regarding the legal implications and potential liability for the Equitable and its Board in amending and designing the ERISA plan. The representative documents are numbered PRV 1716–17(171), 1718–

---

1. For purposes of identifying the documents, I have referred to them by the numbering system

used by defendants, with the corresponding privilege log reference in parentheses.

20(172), PRV 257–58(16), PRV 1819–45(203), and PRV 1596(141). From the content and context of these documents, it is apparent that litigation is anticipated, and the advice relates to the potential exposure of the trustees in their personal capacity.[2]

■ 2. Plaintiffs' motion is **GRANTED** with respect to documents reviewed by inside counsel that are intended to describe or communicate changes in plan benefits to beneficiaries. The representative documents are numbered PRV 1363(126), PRV 112–146(4), PRV 1082–84(85), and PRV 706–53(50). This is an example of a situation in which counsel may be wearing two hats, in that the advice seems to be rendered for the benefit of both parties. On balance, I find the comments attached to these documents are focused on word smithing and editing the language disclosing plan changes for the benefit of the beneficiaries,[3] as opposed to rendering legal advice to the trustees regarding the substance or advisability of those changes. Accordingly, I find that the documents and their annotations fall within the fiduciary exception and should be produced.

■ 3. Plaintiffs' motion is **DENIED** with respect to internal documents in which inside counsel has reviewed and commented on drafts of response letters from management to agents' inquiries, complaints, and claims. The representative documents are numbered PRV 1752–56(186) and PRV 1570–72(135). These draft letters present another instance in which counsel may be wearing two hats. They are explaining changes in benefits, which is a fiduciary function. At the same time, these letters are responses to specific agents who have challenged the Equitable's decision to restrict or alter their benefits. Clearly, the advice given is rendered in anticipation of litigation between the company and its agents. Accordingly, I find that any advice sought or given with respect to the letters was rendered for the protection and counsel of the Equitable, not the plan beneficiaries.

■ 4. Plaintiffs' motion is **GRANTED** with respect to internal documents in which inside counsel has reviewed and commented on the structure and design of the· plan, including the plan's compliance with its statutory obligations under the Internal Revenue Code. The representative documents are numbered PRV 248–55(15) and PRV 824–27(60). Here, I find that inside counsel is acting in its role as a fiduciary and the intended purpose of the advice is to benefit the plan. It is not apparent from the content or context of the documents that the authors are concerned about the trustees' personal liability. Rather, their focus appears to be explaining and assisting with the fiduciary obligations. Accordingly, I find that the real clients of the advice are the beneficiaries and that the documents should be produced.

5. With respect to all documents not produced for *in camera* review, defendant shall produce a revised privilege log. The revised log shall include sufficient information so that, consistent with this opinion, plaintiffs can meaningfully assert whether the fiduciary exception to the privilege exists.

Defendants shall produce the required documents within 15 days of the entry of this Order.

---

**2.** For the same reasons noted here, these documents are protected by the work product doctrine. *See* Fed.R.Civ.Proc. 26(b)(3). Even if the documents were not privileged, plaintiff has failed to show a substantial need for the documents to overcome the doctrine. *See id.*

**3.** Defendant argues that with respect to inside counsel's review of the Summary Plan Description, the comments may have the purpose of pointing out potential liability in the way that the terms are communicated. In my opinion, the comments are more consistent with a purpose of clarifying the documents than with providing legal advice. While I appreciate that the comments may further a dual purpose, my conclusion is informed by the strong concern expressed by courts that the obligation to disclose full and accurate information to plan beneficiaries regarding the administration of the plan is one of the paramount responsibilities of an ERISA fiduciary. *See, e.g., Bins v. Exxon Co.,* 189 F.3d 929, 934 (9th Cir.1999).