**Bonnie L. GEISSAL, Plaintiff,**

v.

**MOORE MEDICAL CORP., et al., Defendant.**

**No. 94–CV–1263.**

United States District Court, E.D. Missouri, Eastern Division.

March 31, 2000.

S. Sheldon Weinhaus, Partner, Weinhaus and Dobson, St. Louis, MO, for Bonnie L. Geissal, Plaintiffs.

Kathi L. Chestnut, Edward M. Goldenhersh, Vice–President, Daniel J. Schwartz, Greensfelder and Hemker, St. Louis, MO, for Moore Medical Corp., Group Benefit Plan of Moore Medical Corp., Herbert Walker, Defendants.

## *MEMORANDUM AND ORDER*

NOCE, United States Magistrate Judge.

This matter is before the Court upon defendants' motion for a protective order that their counsel not be deposed by plaintiff (Doc. No. 93). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Plaintiff seeks relief under the continuation of coverage provisions of the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Comprehensive Omnibus Budget Reconciliation Act of 1986 (COBRA), 29 U.S.C. § 1001, *et seq.* Defendants are Group Benefit Plan of Moore Medical Corporation (Moore Plan) and Moore Medical Corporation, the plan's current administrator and the former employer of plaintiff's decedent, James W. Geissal.

James Geissal commenced this judicial action, alleging that his employment with Moore Medical terminated on July 16, 1993, that he was entitled to a continuation of group health plan coverage, and that on January 27, 1994, defendants discontinued his health plan coverage, in violation of ERISA, 29 U.S.C. § 1104.

In their motion for a protective order, defendants seek to prevent plaintiff from taking the depositions of attorneys Howard Belkin and Peter Mlynarczyk, who were retained by the Moore Plan to provide legal advice regarding the decision of the Plan to terminate Mr. Geissal's COBRA coverage. Defendants argue that the depositions are barred by the attorney-client privilege and the work product doctrine.

Defendants argue that plaintiff has indicated that the subject matter of such depositions [1] might be whether defendants relied in good faith upon then-existing judicial precedent,[2] to the effect that the existence of preexisting group health coverage made the employee ineligible for COBRA continuation of coverage under ERISA, when they terminated Mr. Geissal's COBRA coverage.

Defendants have submitted the written affidavit of former Moore Plan administrator Herbert Walter. In his affidavit, Mr. Walter states:

2. Some time in late 1993 or early 1994, the Moore Plan began contemplating terminating the COBRA coverage of James Geissal on the basis that he might be ineligible for such coverage due to his preexisting medical coverage through his wife's plan. At that point, we recognized that terminating Mr. Geissal's COBRA coverage involved the possibility of litigation for a variety of reasons.

3. Before terminating the COBRA coverage, we sought a legal opinion from attorney Peter C. Mlynarczyk of the Law Offices of Howard H. Belkin. We specifically were concerned with whether we had a sound legal basis for terminating COBRA coverage and whether under the law, Mr. Geissal was ineligible for such coverage.

4. The legal opinion is in a letter dated January 31, 1994; that letter post-dates my January 27, 1994 letter to Mr. Geissal advising that he was ineligible for COBRA coverage by a few days because I sent my letter to Mr. Geissal after discussing with attorney Mlynarczyk his legal opinion; I understood attorney Mlynarczyk's letter to be forthcoming shortly thereafter.

*See* Affidavit of Herbert Walter, filed May 7, 1999.

Defendants show that, after January 27, 1994, Mr. Geissal retained counsel who currently represents Mr. Geissal's widow and representative of his estate. On and after May 27, 1994, plaintiff's counsel corresponded with Plan Administrator Walter, attorney Belkin, and attorney Mlynarczyk, and received responding letters. *See* Memorandum in Support of Defendants' Motion for Protective Order, Exhs. A–J, filed May 3, 1999. In his correspondence, plaintiff's counsel asserted claims for relief under ERISA and sug-

---

1. Defendants have provided the Court with their responses to a series of 10 written questions by which plaintiff indicated the areas of inquiry for the subject depositions. *See* Amended Exhibit K, filed June 2, 1999.

2. *I.e., National Companies Health Ben. Plan v. St. Joseph's Hosp. of Atlanta*, 929 F.2d 1558, 1568, 1571 (11th Cir.1991).

gested that litigation may be engaged to vindicate Mr. Geissal's position. Attorney Mlynarczyk responded to this correspondence of plaintiff's counsel and cited the *National Companies* case as authority for the position that Mr. Geissal was not eligible for COBRA coverage. This judicial action was commenced on June 30, 1994.

In response to the motion, plaintiff argues that, while the subject attorneys have never represented the Moore Plan in this lawsuit, they "likely advised and/or counseled the plan fiduciary, determined what the plan administrator wanted to accomplish, and responded to the kind of claims that could only be made on the plan fiduciary and not on the employer as employer." *See* Statement of Position, filed May 3, 1999, at 1–2.

### *Attorney-client privilege.*

■ When a plaintiff sues a defendant for a violation of federal law, the federal law of privilege applies. *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir.1985), *cert. denied*, 475 U.S. 1119, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986); *see also Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir.1970). Proposed Federal Rule of Evidence 503, also referred to as Supreme Court Standard 503, generally describes the federal common law attorney-client privilege. *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 916 n. 3 (8th Cir.), *cert. denied*, 521 U.S. 1105, 117 S.Ct. 2482, 138 L.Ed.2d 991 (1997); *In re Bieter Company*, 16 F.3d 929, 935 (8th Cir.1994). Standard 503 provides, in relevant part:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and his lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

*Id.* (quoting Supreme Court Standard 503(b)).

In the face of defendants' invocation of the attorney-client privilege, plaintiff asserts the "fiduciary exception" to the privilege described in *Garner*, 430 F.2d at 1103–04. In *Garner*, the court recognized that the interests of a corporation's shareholders are nearly identical to the interests of the corporation's management, *i.e.* "that the beneficiaries of [the corporation's] action are the stockholders." 430 F.2d at 1101. The court summarized its holding in the case:

The attorney-client privilege still has viability for the corporate client. The corporation is not barred from asserting it merely because those demanding information enjoy the status of stockholders. But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

*Id.* at 1103–04 (footnote omitted).

### *Work Product Doctrine.*

Regarding the work product doctrine, the Supreme Court long ago established the analytical framework for the lower courts. *See Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *United States v. Pfizer Inc.*, 560 F.2d 326, 333 (8th Cir.1977). The holding of *Hickman v. Taylor* and its progeny was eventually codified by Fed. R.Civ.P. 26(b)(3) in 1970. *Pfizer*, 560 F.2d at 334. *Pfizer* analyzed Rule 26(b)(3) as follows:

The rule establishes a qualified immunity for ordinary work product that which (sic) does not contain the mental impressions, conclusions or opinions of the attorney. Such work product is discoverable only upon a showing of substantial need and an inability to secure the substantial equivalent of the items through alternate means without undue hardship. Rule 26(b)(3) provides special protection for an attorney's opinion work product.

*Id.* Therefore, "[a]s to ordinary work product, a litigant can secure access to these documents by establishing the relevance of the requested documents, Fed.R.Civ.P. 26(b)(1), and by satisfying the substantial need and undue hardship requirements of Rule 26(b)(3)." *Id.* at 335. However, "opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Id.* at 336.

The parties have arrayed a number of relevant judicial opinions as support for their positions. After carefully considering the proffered authorities, the Court concludes that neither the attorney-client privilege nor the work product doctrine prevents disclosure of the legal advice (oral or written in the legal opinion letter of said counsel dated January 31, 1994) given by the subject counsel to the Moore Plan administrator upon which the administrator relied when he issued the letter dated January 24, 1994, informing Mr. Geissal that his COBRA coverage would be discontinued. The record establishes that the communications of confidential legal advice between the subject counsel and the plan administrator thereafter should be subject to the attorney-client privilege.

Contrary to defendants' argument, the "fiduciary exception" to the attorney-client privilege is well established in federal jurisprudence and has been applied in cases involving review of the decisions of ERISA plan administrators. *See United States v. Mett,* 178 F.3d 1058, 1063 (9th Cir.1999); *In re Grand Jury Proceedings Grand Jury No. 97–11–8,* 162 F.3d 554, 556–57 (9th Cir.1998); *In re Long Island Lighting Co.,* 129 F.3d 268, 271–72 (2nd Cir.1997); *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 645 (5th Cir.1992); *Washington–Baltimore Newspaper Guild, Local 35 v. Washington Star Co.,* 543 F.Supp. 906, 909 (D.D.C.1982); *Donovan v. Fitzsimmons,* 90 F.R.D. 583, 586 (N.D.Ill. 1981); *Garner v. Wolfinbarger,* 430 F.2d 1093, 1103–04 (5th Cir.1970); *Fischel v. Equitable Life Assurance,* 191 F.R.D. 606, 607–08 (N.D.Calif.2000); *Hudson v. General Dynamics,* 73 F.Supp.2d 201, 202 (D.Conn. 1999); *Johnston v. Dillard Dept. Stores, Inc.,* 152 F.R.D. 89, 93–94 (E.D.La.1993); *Quintel Corp. v. Citibank, N.A.,* 567 F.Supp. 1357, 1360–62 (S.D.N.Y.1983); *cf., Huie v. DeShazo,* 922 S.W.2d 920 (Tex.1996).

The Court is persuaded that the analysis employed by the Ninth Circuit in *Mett* well suits the principles of ERISA plan administration and protects the rights of the administrator where the interests of the administrator and the plan beneficiaries diverge. It is well established that an ERISA trustee or plan administrator, who administers the plan for the benefit of all of the beneficiaries, must "disclose to plan beneficiaries all information regarding plan administration." *Mett,* 178 F.3d at 1063; *see also In re Long Island Lighting,* 129 F.3d at 271–72; *Huie,* 922 S.W.2d at 923. From another angle, the beneficiaries, not the plan trustee, are the clients of the attorney who provides legal advice for the administration of the plan. *Mett,* 178 F.3d at 1063; *In re Grand Jury Proceedings,* 162 F.3d at 556; *Wildbur,* 974 F.2d at 645; *Fischel,* at 607–08.

However, not all acts of the plan administrator which "relate to" the plan involve the administration of the plan. *See Hudson,* 73 F.Supp.2d at 202. When an administrator is required to justify or to defend against a beneficiary's claims made because of an act of plan administration, the administrator does not act directly in the interests of the disappointed beneficiary but in his own interests or in the interests of the rest of the beneficiaries. *Mett,* 178 F.3d at 1063; *Fischel,* at 608–09; *Hudson,* 73 F.Supp.2d at 203.

Thus, the case authorities mark out two ends of a spectrum. On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries ..., the attorney-client privilege remains intact.

*Mett,* 178 F.3d at 1064; *Hudson,* 73 F.Supp.2d at 203.

■ Defendants argue that none of the legal advice secured by the plan administrator was for the purpose of plan administration but was for the purpose of defending against the disagreement and claims of the disappointed plan beneficiary, James W. Geissal. The Court disagrees. For the defendants to prevail on this argument, whenever the administration of a plan involves the denial of a beneficiary's claim or benefits under a plan, all of the antecedent, pre-decisional legal advice of counsel would be subject to the attorney-client privilege and not available for review by the beneficiaries of the plan, including the disappointed beneficiary. This contradicts the principle that the plan's administrator or trustee administers the plan in the beneficiaries' best interests. The prospect of post-decisional litigation against the plan by a disappointed beneficiary can exist whenever the plan denies a claim. Because the denial of claims is as much a part of the administration of a plan as the decision-making which results in no unhappy beneficiary, the prospect of post-decisional litigation against the plan is an insufficient basis for gainsaying the fiduciary exception to the attorney-client privilege.

*Pre-decisional legal opinion and advice.*

■ Then plan administrator Herbert Walter states in his affidavit that the plan obtained a legal opinion from attorney Mlynarczyk before the decision to terminate Mr. Geissal's COBRA coverage was finally made, to determine "whether we had a sound legal basis for terminating COBRA coverage ...." *See* Affidavit of Herbert Walter, filed May 7, 1999, at ¶ 3. That legal advice was initially oral and was reduced to writing in a letter dated January 31, 1994. *Id.* at ¶ 4. All beneficiaries, including the ultimately disappointed beneficiary, are entitled to know what the legal opinion was, in its oral and written forms. *See Mett,* 178 F.3d at 1063; *see also In re Long Island Lighting,* 129 F.3d at 271–72. For the purposes of learning this information, Mr. Geissal and the other beneficiaries of the plan were the clients of the retained law firm, not the administrator. *See Mett,* 178 F.3d at 1063; *In re Grand Jury Proceedings,* 162 F.3d at 556; *Wildbur,* 974

F.2d at 645; *Fischel,* at 607–08; *Petz v. Ethan Allen, Inc.,* 113 F.R.D. 494, 497 (D.Conn.1985). Therefore, the attorney-client privilege is inapplicable to bar the production of counsel's communications with the plan administrator upon which this decision of the plan depended.

■ Defendants have not shown that the pre-decisional legal advice and opinion are attorney work product. While litigation can result from any fiduciary act, the administrator's acts of securing legal advice for the plan, and the advice rendered, *prior* to the plan's decision regarding benefits cannot be said to be in anticipation of litigation. Such acts occurred before the later-objected to decision was final and the divergence of interests occurred. *Harper v. Auto–Owners Ins. Co.,* 138 F.R.D. 655, 662 (S.D.Ind.1991). The fact that litigation later resulted does not change the ordinary business nature of the attorney's legal advice into litigation work product. *Garfinkle v. Arcata Nat'l Corp.,* 64 F.R.D. 688, 690 (S.D.N.Y.1974). Thus, the Court concludes upon the record before it that the pre-decisional advice and opinions of the subject counsel are not protected from discovery by the attorney work product doctrine.

Further, to the extent that defendants rely upon the good-faith defense to plaintiff's judicial claims, they cannot shield plaintiff from pretrial discovery of the factual underpinnings of their good-faith defense. *Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir.1992).

*Post-decisional legal advice.*

■ Upon the record before the Court, the plan's administrative act of denying the COBRA coverage ended with the January 27, 1994, decision. The record indicates that soon after January 27, 1994, Mr. Geissal retained counsel who thereupon impliedly and expressly suggested to the plan's administrator and to subject counsel that litigation would result if the plan did not retract the termination of COBRA coverage. Those communications evidence that the interests of Mr. Geissal as a beneficiary of the plan and the interests of the plan administrator in

justifying and protecting the decision to terminate sufficiently diverged and differed to warrant the plan administrator in obtaining confidential legal advice on the matter. *Fischel*, at 609–10; *Johnston*, 152 F.R.D. at 93, n. 9; *Quintel*, 567 F.Supp. at 1363. Upon the record before it, the Court concludes that the communications between the plan's administrator and the retained legal counsel are protected by the attorney-client privilege and that plaintiff has not shown sufficient cause to bar the application of the privilege.

The record further establishes that the prospect of litigation was sufficient to erect the attorney work product doctrine as a bar to the subject information. *Huie*, 922 S.W.2d at 927.

### *Amended Exhibit K topics.*

Plaintiff's counsel has provided defendants with a series of ten written questions which indicate the areas in which counsel would inquire of the subject counsel during their depositions. The Court provides the parties with the following guidance in determining whether the deposition questioning of the subject counsel on the identified topics would or would not be barred by the attorney-client privilege or the attorney work product doctrine.

### *Question 1.*

Question 1: Did you ever represent any of the Defendants in this lawsuit, and if so, for what period of time (giving dates) did you represent any of the defendants in this lawsuit prior to the commencement of this lawsuit? What was the nature of your representation?

Objections: The date Defendants engaged Defendants' attorneys is discussed in the Memorandum in Support. Defendants object on the basis of attorney-client privilege and the work product doctrine. This question further seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.

By Question 1, plaintiff asks whether counsel ever represented defendants; if so, over what period of time; and the nature of the representation. The Court overrules the defendants' objections to this inquiry. *Diversi-*

*fied Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir.) (regarding the June 19, 1975 Memorandum), *aff'd on relevant ground, rev'd on other grounds*, 572 F.2d 606, 607 (8th Cir.1978). The existence of the attorney-client relationship and whether or not the subject counsel rendered legal advice to defendants regarding the termination of COBRA coverage for Mr. Geissal is not privileged information.

### *Question 2.*

Question 2: Did you have any role with respect to drafting the language of the COBRA notice that was given to Mr. Geissal and possibly other employees? What was that role, and if it included giving advice or making recommendations, what advice or recommendations did you give or make to any of the defendants?

Objections: Defendants object to this question on the ground that it seeks communications protected by the attorney-client privilege. Communications between counsel and defendants relating to the drafting of a COBRA notice concern plan design, a matter as to which the defendants did not owe a fiduciary obligation to Mr. Geissal, and are therefore not discoverable even under the so-called fiduciary exception to the attorney-client privilege.

By Question 2, plaintiff seeks information about the role of counsel in drafting the language of the COBRA notice that was given to Mr. Geissal, *i.e.*, the advice and recommendations counsel made to defendants. The Court concludes, based upon the above-stated discussion of the law, that defendants cannot invoke the attorney-client privilege or the attorney work product doctrine to prevent disclosure of such communications which occurred before January 27, 1994. All such communications were made in support of the plan administration and not in anticipation of litigation.

### *Questions 3 and 8.*

Question 3: At any time before the institution of this suit, did the defendants ever

make you aware, or were you aware, of the language contained in Section 134 of the plan document which states that "The coverage under this provision will extend for at least the period beginning on the date coverage terminates and ending not earlier than the earliest of the following: 8. The date on which the *qualified beneficiary* first becomes, after the date of the election, covered under any other group health plan as an employee or dependent, or otherwise, becomes entitled to benefits under Title XVIII of the Social Security Act *(Medicare)*." And if so, what consultations and advice did you provide?

Objections: Defendants object to this question on the ground that it seeks communications protected by the attorney-client privilege. This question seeks communications between counsel and defendants relating to the design of the plan. The defendants did not owe a fiduciary obligation to Mr. Geissal with respect to the design of a plan and the communications are therefore not discoverable even under the so-called fiduciary exception to the attorney-client privilege. This question also seeks the thoughts, mental impressions, conclusions and opinions of attorneys Belkin and Mlynarczyk.

Question 8: Did you discuss with any of the defendants and/or give advice and counsel to any of the defendants with respect to administrative processing of those claims for medical payment that defendants or any of them had received from medical providers for payments, and if so, specify all such advice and consultations. Did you consult with any of the defendants at the time with respect to application of Article IV of the plan?

Objections: Defendants object to the discovery of any communications between counsel and defendants and, for the reasons set forth above in response to plaintiff's fourth proposed question, defendants object to this question on the basis of the attorney-client privilege. In addition, this question also seeks the thoughts, mental impressions, conclu-

sions and opinions of attorneys Belkin and Mlynarczyk.

By Questions 3 and 8, plaintiff seeks information about any communications between defendants and subject counsel on the language of Section 134 of the plan document and about the processing of claims for medical service payments. The Court will overrule the attorney-client privilege and the attorney work product doctrine objections with respect to such communications occurring before the January 27, 1994, decision to deny benefits. Such communications which occurred after that decision are privileged.

*Questions 4, 5, and 6.*

Question 4: Did the information you referred to in the second paragraph of your June 2, 1994 letter come from any of the defendants, or their agents, servants or employees? And if so, identify the person(s) and specify how, when and what information came into your possession, and the manner (and when) the defendants advised you such information became known to them.

Objections: Defendants object to this question on the ground that it seeks communications protected by the attorney-client privilege and the work product doctrine. The record shows that plaintiff's attorney wrote a letter to defendants on May 27, 1994 requesting reinstatement of Mr. Geissal's COBRA coverage. After this letter was sent, any mutuality of interests between Mr. Geissal and defendants, which is a prerequisite to the application of the fiduciary exception to the attorney-client privilege, ceased to exist, if it existed at that point. Mr. Geissal was interested in obtaining COBRA coverage whereas the defendants did not believe that they were required to provide COBRA coverage to Mr. Geissal. Once the interest of the parties diverged, which divergence possibly occurred as early as the time Defendants began contemplating terminating COBRA coverage, the fiduciary exception is no longer applicable. All communications that took place after May 27, 1994 are therefore not discover-

able. In addition, this question also seeks the thoughts, mental impressions, conclusions and opinions of attorneys Belkin and Mlynarczyk.

Question 5: At the time you wrote your letter of June 2, 1994, were you aware of judicial decisions on the subject other than the 11th Circuit decision you cite in that letter, and if so, what other decision(s). Did you discuss or mention these other decisions to any of the defendants, whether by name or more generally at any time, whether before or after your June 2 letter?

Objections: For the reasons set forth above in response to plaintiff's fourth proposed question, defendants object to this question on the ground that it seeks communications protected by the attorney-client privilege. In addition, this question also seeks the thoughts, mental impressions, conclusions and opinions of attorneys Belkin and Mlynarczyk.

Question 6: Is your answer changed by the citation of judicial decisions in June 7, 1994 letter?

Objections: For the reasons set forth above in response to plaintiff's fourth proposed question, defendants object to this question on the ground that it seeks communications protected by the attorney-client privilege. In addition, this question also seeks the thoughts, mental impressions, conclusions and opinions of attorneys Belkin and Mlynarczyk.

The Court is persuaded that Questions 4, 5, and 6 involve post-** decisional matters that are protected by the attorney-client privilege and the attorney work product doctrine.

### Questions 7, 9, and 10.

Question 7: How did you come to determine the copying costs of the plan documents would be $50 as stated in your letter of June 28, 1994, and did you have any discussions with any of the defendants about the costs?

Objections: For the reasons set forth above in response to plaintiff's fourth

proposed question, defendants object to this question on the ground that it seeks communications protected by the attorney-client privilege. In addition, this question also seeks the thoughts, mental impressions, conclusions and opinions of attorneys Belkin and Mlynarczyk.

Question 9: Did you continue to represent the defendants or any of them on matters involving COBRA rights of employees suffering COBRA qualifying events after Mr. Washburn appeared as counsel of record in the instant suit?

Objections: This question also seeks the thoughts, mental impressions, conclusions and opinions of attorneys Belkin and Mlynarczyk.

Question 10: Without revealing advice and consultation on non-plan matters, how did it happen that you did not continue to represent the defendants as counsel of record with respect to plan (or corporate) matters?

Objections: Defendants object to this question on the ground that it seeks communications protected by the attorney-client privilege. The communications do not relate to plan administration and therefore are not discoverable under the fiduciary exception to the attorney-client privilege. In addition, this question also seeks the thoughts, mental impressions, conclusions and opinions of attorneys Belkin and Mlynarczyk.

The Court is in agreement with defendants that Questions 7, 9, and 10 inquire about communications and opinions of counsel occurring after the January 27, 1994, plan decision. Such are protected by the attorney-client privilege and the work product doctrine.

For the reasons set forth above and to the extent set forth above,

**IT IS HEREBY ORDERED** that the motion of defendants for a protective order (Doc. No. 93) is in part denied. In all other respects the motion is sustained.

** amended nunc pro tunc by order dated April 26, 2000.